**THERE TO CARE, INC.,**
**Plaintiff–Appellant,**

v.

**COMMISSIONER OF the INDIANA DEPARTMENT OF REVENUE,**
**Defendant–Appellee.**

No. 92–3986.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1993.

Decided March 23, 1994.

Charles E. Bloom (argued), Herschell, Accettola, Bloom & Associates, Toledo, OH, for plaintiff-appellant.

Donna S. Nichols, Office of the Atty. Gen., Federal Litigation, Arend J. Abel (argued), Barnes & Thornburg, Terry G. Duga, Dist. Atty. Gen., Office of the Atty. Gen., Agency Litigation, Indianapolis, IN, for defendant-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and CURTIN, District Judge.*

EASTERBROOK, Circuit Judge.

Indiana permits charitable organizations to conduct a limited number of gambling events. In 1992 the state amended its Charitable Gaming Act, adding restrictions that curtailed the bingo games being held in Mishawaka by There to Care (TTC), a charitable corporation. In October 1992 the state directed it to cease operating bingo games, giving several reasons: TTC had not been doing business in Indiana for five years (see I.C. § 4–32–6–20(a)(1)(C)); it ran bingo too frequently (the limit is three events a week, I.C. § 4–32–9–18, no more than two of which may be held in the same rented facility, I.C. § 4–32–9–20(b)); it rented too opulent a hall (the statute sets a limit of $200 per day, I.C. § 4–32–9–20(a)(2), and there is an administrative limit on rental paid for property used to run the game); and the same persons were conducting bingo for multiple charities (TTC had a sister charity, Extend–A–Hand Association, Inc., hold bingo games in the same hall, an obvious device to evade the weekly limit). TTC filed this suit under 42 U.S.C. § 1983, contending that the state violated the commerce clause of the Constitution by discriminating against corporations that principally do business in other states, the first amendment by limiting the effective size of the bingo operation and thus cutting down on opportunities for speech, and state law.

Invoking *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the district court concluded that state courts should resolve TTC's claims based on state law and the commerce clause. The court deemed the statutes ambiguous and capable of a saving construction—although it did not identify any ambiguity. Although it refused to decide most of the contentions TTC pressed, it addressed the first amendment arguments on the merits, rejecting them because none of the rules prevents TTC from espousing views and soliciting funds. TTC immediately took the other claims to an Indiana court, which ruled in its favor on two out of the three contentions TTC advanced. *There to Care, Inc. v. Department of Revenue*, No. 71D07 9212 CP 00192 (St. Joseph Sup.Ct. June 30, 1993). The state court concluded that an organization in existence for five years is qualified under I.C. § 4–32–6–20(a)(1)(C) whether or not it has been doing business in Indiana for five years. (TTC has been raising money in Ohio since 1977.) It further concluded that TTC owned rather than leased the personal property used to conduct the games, so that the administrative regulations setting limits on rental payments for personal property did

not apply. Finally, the state court held, the statutory limit on the number of "allowable event[s]" per week at a rented hall applies to the hall itself rather than to the operator; thus if TTC runs a bingo game in a rented hall twice each week, Extend–A–Hand may not use that hall for gambling purposes. The state judge invited TTC to apply for a new license; TTC has not done so, deeming the other statutory obstacles (such as the limit to $200 rental per day) insuperable. Both sides have appealed: TTC to us from the district court's decision, and the state's licensing official to the Court of Appeals of Indiana from the decision of the Superior Court.

A word is in order, before we take up the merits, about the unusual procedure the district court employed. *Pullman* permits a court to *abstain,* that is, to withhold decision while the parties present their dispute to a different forum. Parceling out issues in an ongoing case does more than inconvenience the parties by requiring them to litigate in multiple places at the same time. It creates a distinct possibility that one or the other court will render an advisory opinion. Federal courts decide *cases,* not legal issues in the abstract. Before taking up a constitutional issue, a federal court should satisfy itself that there is no available non-constitutional ground of decision. *Spector Motor Service, Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944); *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501, 105 S.Ct. 2794, 2800–01, 86 L.Ed.2d 394 (1985). Yet by dispatching to state court all arguments under state law and the commerce clause, then immediately rendering a decision on the first amendment theories, the district court may well have been expressing an unnecessary—and therefore imprudent, if not strictly advisory—opinion.

■ TTC does not have multiple independent claims; it has multiple legal theories supporting a single claim for relief. The state court might have resolved the whole controversy in TTC's favor. Alternatively the state court might have interpreted Indiana law to place an insuperable obstacle in TTC's path no matter what the district court made of its arguments under the first amendment. See *Harp Advertising Illinois,*

*Inc. v. Chicago Ridge,* 9 F.3d 1290 (7th Cir. 1993). As things turned out neither occurred, or at least neither has occurred yet. (The state case is not over.) When a federal court abstains, it should send the whole case to state court, returning to the subject only if the final disposition in that court leaves an open federal issue, and then only to the extent principles of preclusion permit successive litigation. *Moses v. County of Kenosha,* 826 F.2d 708 (7th Cir.1987). Only in this way can the federal court provide states with the opportunity to resolve ambiguities in their own law while ensuring that the federal adjudication comports with Article III of the Constitution. Because the risk of advisory adjudication has not become a reality in this case, and because neither side has asked us to defer decision, we shall proceed to the merits.

■ Is bingo speech? People buy cards in the hope of winning back more than they spend. A voice at the front of the hall drones "B–2" and "G–49"; after a while someone at the back of the hall shouts "BINGO!" and gets a prize. These words do not convey ideas; any other combination of letters and numbers would serve the purpose equally well. They employ vocal cords but are no more "expression" than are such statements as "21" in a game of blackjack or "three peaches!" by someone who has just pulled the handle .of a one-armed bandit. Statements promoting gambling are speech, albeit without the first amendment protection accorded to political speech, see *United States v. Edge Broadcasting Co.,* — U.S. ——, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993); *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986); cf. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), but wagering money is an activity—just as the business of leasing property is not speech and may be regulated by zoning laws and the like, even if the lessee wants to put on a play or open a newsstand. Cf. *Graff v. Chicago,* 9 F.3d 1309 (7th Cir.1993) (en banc). Gambling has traditionally been closely regulated or even forbidden, without anyone suspecting that these restrictions violate the first amendment.

According to the complaint, TTC uses bingo games to spread the word about its activities. Posters on the walls proclaim its mission; during the games organizers recruit volunteers; net proceeds of the games support charitable endeavors that may include speech. But persons who seek to engage in speech cannot avoid the application of state laws that are neutral with regard to the content and viewpoint of their expression. The state may collect income taxes, which reduce the resources at the command of speakers, but laws indifferent to the content or even existence of speech pose no constitutional difficulties. E.g., *Jimmy Swaggart Ministries v. California Board of Equalization*, 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) (sales and use taxes on religious articles, in common with other merchandise, do not offend first amendment). Indiana does not distinguish between bingo parlors that have posters on the walls and those that do not; its statute regulates the process of wagering rather than expression that may accompany gambling.

To put this in doctrinal terms:

A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.... Government regulation of expressive activity is content neutral so long as it is *"justified* without reference to the content of the regulated speech."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989), quoting, with emphasis in original, from *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). See also, e.g., *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 430, 110 S.Ct. 768, 779, 107 L.Ed.2d 851 (1990); *United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). Indiana's regulation of gambling is unrelated to the content of any expression. It is justified without reference to that expression. Indiana invokes the usual arguments against gambling, paternalistic but assuredly content-neutral. Perhaps

these days the real reason for limiting bingo parlors and the like is to protect the public fisc; Indiana now conducts a state lottery. But whether the statute serves to shelter improvident citizens from lures to part with their money, or to protect the state's gambling juggernaut from competition, is irrelevant; neither justification depends on the content or viewpoint of any charitable organization's speech.

Three opinions serve as the mainstays of TTC's case. In *Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); and *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), the Court held that the first amendment places severe limits on states' ability to regulate charitable fundraising. Games of chance are effective in fundraising and so, according to TTC, are protected by the first amendment. On this understanding, TTC is entitled to run bingo games seven nights a week in the largest hall it can find. When asked at oral argument how far this principle extends, TTC's lawyer ventured that the first amendment would entitle it to stage a bullfight in the Hoosier Dome, if in its view that contest would raise money for its endeavors and be a good forum for the dissemination of its views. Charities do not have special privileges under the first amendment; by parallel reasoning, then, political and educational organizations, the press, and speakers in general also could engage in gambling and other proscribed activities to raise funds.

What TTC fails to appreciate, however, is that the statutes at issue in *Schaumburg* and its successors were directed only against organizations engaged in expression. Schaumberg prohibited fundraising activities that did not return at least 75% of gross proceeds to the charities. 444 U.S. at 624, 100 S.Ct. at 829. But it did not forbid, say, the manufacture and sale of automobiles when the costs of the business exceeded 25% of the gross income. Because the regulation was targeted at organizations that were distinguished by their manner of expression, the govern-

ments could not avail themselves of the principle that regulation *unrelated* to expression is not doomed by incidental effects. In *Munson* the Court understood the law as "a direct restriction on the amount of money a charity can spend on fundraising activity" and therefore as "a direct restriction on protected First Amendment activity." 467 U.S. at 967 & n. 16, 104 S.Ct. at 2852 & n. 16. The other two cases approached the subject in the same way. Indiana has not enacted a law that disfavors or heaps special regulation on charitable expenditures for solicitation; charities may spend as much as they want to raise money and engage in expression. True enough, a charity may not spend more than $200 a night to rent a hall for bingo, but a non-charity may not spend a penny on this endeavor. *Only* charities are entitled to conduct games of chance under the Charitable Gaming Act. TTC has been favored over, say, Hilton Hotels, which would dearly love to open casinos in underused ballrooms; that charities have not been favored by as much as they would prefer does not create a problem under the first amendment. *Schaumburg, Munson,* and *Riley* do not create exemptions from rent-control statutes, even though those statutes disable charities (and other speakers) from outbidding other potential lessees.

Charities in Indiana have a protected market in gambling. Having barred commercial enterprises from this business, and thus created some monopoly rents for the plucking, the state did not violate the first amendment by setting limits on charities' endeavors. The statute is indifferent to the content and viewpoint of charities' expression; no more is required.

AFFIRMED.