**VICTOR OOLITIC STONE COMPANY, INC. et al., Plaintiffs,**

v.

**CSX TRANSPORTATION, INC., Monroe County Board of Commissioners, and Monroe County Parks and Recreation Department, Defendants.**

No. IP 93–1538–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 7, 1994.

---

Paul J. Watts, Watts Law Office, Spencer, IN, Thomas E. Densford, Taylor Bauer & Densford, Bloomington, IN, for plaintiffs.

James R. Trulock, II, Stephen R. Galvin, Monroe County Attys., Michael L. Carmin, Cotner Andrews Mann & Chapman, Bloomington, IN, Charles H. Montange, Seattle, WA, for defendants.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

On February 16, 1993, the Interstate State Commerce Commission ("ICC" or "Commission") granted CSX's request for exemption to abandon its 22.5 mile rail line between Bloomington and Bedford, Indiana. *See* 58 FR 8635–36. The exemption took effect on March 18, 1993. *See id.* The Monroe County Parks and Recreation Department ("MCPRD") subsequently sought to convert the abandoned rail line into a recreation trail and applied for a notice of interim trail use ("NITU") with the ICC. On March 22, 1993, the Commission denied the request because CSX refused to negotiate a trail use agreement. CSX later changed its mind, however, and filed a motion with the ICC on September 14, 1993, requesting that the earlier proceeding be reopened and that the Commission grant an NITU. *See* Defendants' Ex-

hibit A. The Commission agreed and issued an NITU on September 23, 1993. CSX and MCPRD then executed a Quitclaim Deed on November 15, 1993.

The Plaintiffs in this matter, who primarily are landowners with property adjoining the corridor, allege that CSX abandoned its line as of March 19, 1993, and that whatever property interest that CSX held in the corridor reverted to them on that date. Their amended complaint is in three counts: Count I seeks to quiet title to the corridor; Count II alleges slander of title; and Count III is a claim for injunctive relief based on alleged violations of the Fifth Amendment of the United States Constitution, and Article 1, section 12 of Indiana's Constitution. The Defendants move the Court to enter judgment in their favor on these counts pursuant to Rules 12(b)(1), 12(c), and 56 of the Federal Rules of Civil Procedure.

The Plaintiffs' strategy in this case is lost on the Court. What if the Plaintiffs were to prevail on all of their claims? Then what? The ICC's decision would not suddenly evaporate. The Plaintiffs explain in their brief that they "do not seek to enjoin or suspend a rule, regulation or order of the Interstate Commerce Commission ("ICC") as the Commission was divested of jurisdiction upon the consummation of the abandonment of the railroad corridor." Plaintiffs' Response Brief, at 2. That of course begs the question since the result that the Plaintiffs seek assumes that the ICC decision is a nullity. The fact remains that the ICC order stands and that the Commission decided that it had jurisdiction to reopen this matter and issue an NITU.

■ Sections 2321 and 2342 of Title 28 specifically provide that the court of appeals has exclusive jurisdiction to review the validity of ICC rules, regulations or orders. A challenge to an order need not be direct for that jurisdiction to be invoked; all that is required is that the effect of the prayed for relief contradict a Commission order. *See Assure Comp. Transp., Inc. v. United States,* 629 F.2d 467, 472 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) (" 'The statutory procedure for review is applicable although an order is not directly attacked—so long as the practical effect of a successful suit would contradict or countermand a Commission order.' "), *citing, B.F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349, 1353–54 (3rd Cir.1970). Because the court of appeals has exclusive jurisdiction over challenges to ICC orders, including collateral attacks, this Court lacks jurisdiction to resolve counts I & II of the Plaintiffs' amended complaint. *Id.*

■ The Plaintiffs argue that the Court has jurisdiction to adjudicate Count III because it arises under the Fifth Amendment of the United States Constitution. Constitutional litigation is a means of last resort, however; it is well-known that "[b]efore taking up a constitutional issue, a federal court should satisfy itself that there is no available non-constitutional ground of decision." *There to Care, Inc. v. Commissioner of the Indiana Department of Revenue,* 19 F.3d 1165, 1167 (7th Cir.1994). In this case, the Court need not address the Plaintiffs' taking claim because the Plaintiffs presently l..k standing to litigate it. The first element necessary to establish standing is that ' "the plaintiff must have suffered 'an injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural or hypothetical....' " ' *Indemnified Capital Inv. v. R.J. O'Brien & Assoc.,* 12 F.3d 1406, 1408 (7th Cir.1993), *citing, Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The "legally-protected interest" that the Plaintiffs believe the Defendants have violated is, at least for now, "conjectural or hypothetical."

■ Count III claims that the County Commissioners and MCPRD have taken the corridor without due process. To demonstrate an "injury in fact" based on this conduct, the Plaintiffs need to show that they have something more than a hypothetical interest in the corridor. They contend that "Indiana law is well settled that the abandonment of railroad operations extinguishes an easement and permits adjoining landowners, as titleholders in fee simple, to reclaim the easement." Plaintiffs' Response Brief, at 5.

In its decision of September 23, 1993, however, the Commission determined that CSX had not abandoned the rail line. *See* Defendants' Exhibit A. In addition, the U.S. Supreme Court explained in *Preseault v. I.C.C.*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), that "[s]ection 8(d) of the amended Trails Act provides that interim trail use 'shall not be treated for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.' 16 U.S.C. § 1247(d).... By deeming interim trail use to be like discontinuance rather than abandonment ... Congress prevented property interests from reverting under state law...." *Id.* at 8, 110 S.Ct. at 919–20. Depending on whether the ICC's conclusion regarding CSX's abandonment of the line is faulty, the Plaintiffs may or may not have a property interest in the corridor. While it is true that "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff" when ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *see Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993), the Court is not at liberty to ignore undisputed facts. Here, the parties do not disagree that the ICC concluded that no abandonment occurred and that it retained jurisdiction to issue the NITU. To proceed to litigate Count III at this time would require the Court to assume into existence a fact that is essential to the case-or-controversy requirement of Article III: that the Plaintiffs have a property interest in the corridor. *See Lujan,* —— U.S. at ——, 112 S.Ct. at 2136 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Given this fact, it is sound judicial policy not to expend scarce judicial resources adjudicating Count III only to have the court of appeals later find that no abandonment ever occurred.

Because the Plaintiffs' property interest in the corridor is speculative and subject to conjecture, the Plaintiffs do not have standing to assert their constitutional claims against the County Commissioners and the MCPRD at this time. This Court lacks jurisdiction to adjudicate Count III of the Plaintiffs' amended complaint.[1]

### CONCLUSION

The Defendants' motion to dismiss (*i.e.* motion for summary disposition) is granted as to all counts of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). The Plaintiffs' motion for class certification, and the Defendants' motion to postpone class action determination and motion to dismiss for failure to join necessary and indispensable parties, are denied as moot.

It is so ORDERED.

---

1. Even if the Court were to reach the merits of Count III, the Plaintiffs' claim for injunctive relief would have to be denied, assuming of course that the ICC's actions are not ultra vires. "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017–18, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984). The National Trails System Act, *supra*, authorizes interim use of rail corridors as recreation trails. *See* 16 U.S.C. § 1241 et seq. The Tucker Act is the appropriate vehicle for obtaining such compensation. *See Preseault*, 494 U.S. at 13–15, 110 S.Ct. at 923.