**William J. SCHNEIDER and Delores H. Schneider, Husband and Wife, et al., Plaintiffs,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Nebraska Trails Council, Nebraska Trails Foundation, Inc., Great Plains Trails Network, and Lower Platte South Natural Resources District, Defendants.**

Nos. 4:CV94–3114, 94–3115.

United States District Court, D. Nebraska.

Sept. 16, 1994.

John T. Rogers, Columbus, NE, for plaintiffs.

Joseph D. Anthofer and Christine M. Smith, Omaha, NE, for defendant Union Pacific R. Co.

Lavern R. Holdeman and Jim Titus, Lincoln, NE, for defendants Nebraska Trails Foundation, Inc. and Nebraska Trails Council.

K. Kristen Newcomb, Lincoln, NE, for Great Plains Trails Network.

Steven G. Seglin, Lincoln, NE, for Lower Platte South Natural Resources Dist.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Plaintiffs brought these actions in the state courts of Nebraska endeavoring to quiet title to certain real estate. In essence plaintiffs contended that whatever rights a railroad had to certain real estate, those rights had been abandoned. Defendants then removed these cases to this court pursuant to 28 U.S.C. §§ 1441(b) and 1442(a)(2) (1994). Defendants have filed motions for summary judgment, which I now resolve in their favor, but not on the merits.

Both of these cases raise the same general issue: whether Section 208(d) of the National Trails System Act Amendments, 16 U.S.C. § 1247(d) (1985) (the Act) precludes a finding that a railroad has abandoned a rail line. Because plaintiffs challenge on non-constitutional grounds whether defendants have complied with orders of the Interstate Commerce Commission respecting the Act, I agree that the motions for summary judgment must be granted because this court lacks jurisdiction.

### I.

Defendants have filed evidentiary materials in support of their motions for summary judgment. (filing 17 and 27 in CV 3314 and filing 18 and 28 in CV 3115). Plaintiffs "do not dispute the facts sworn to in the affidavits presented with Defendants' Motion for Summary Judgment". Plt.s' Brief in Opp. to Mot. for Summary Judgment at 2. Rather plaintiffs assert that the "predominant law issue is the question of Defendants' compliance with the orders of the ICC." *Id.*

Plaintiffs have not filed any evidence in opposition to the motions for summary judgment.

From the evidence filed by the defendants in support of their motions for summary judgment, and the undisputed portions of the pleadings in this case, I find the following facts to be the material undisputed facts for purposes of this case:

1. By virtue of various methods of acquisition, the Union Pacific Railroad Company (UP) acquired rights[1] to use real estate in Nebraska for operation of a rail line, part of which real estate became the rail line known as the Stromsburg branch;

2. For purposes of the motion for summary judgment, I assume that each, and every plaintiff in both of these cases would have some right, title or interest in and to the subject real estate comprising the Stromsburg branch if the UP "abandoned" the Stromsburg branch;

3. There is currently in effect one or more orders of the Interstate Commerce Commission (particularly the orders of September 17, 1993 and April 4, 1994) which provide, among other things, the following:

(a) The UP was allowed to withdraw its notice of "Exempt Abandonment" of the Stromsburg branch before the notice of abandonment was effective, and the Commission granted the requested Notice of Interim Trail Use;

(b) Without "abandoning" the Stromsburg branch, the UP was allowed to discontinue service, cancel tariffs, and salvage track and materials on the Stromsburg branch provided that it entered into an "interim trail use/rail banking" agreement by July 1, 1994;

(c) If no such "interim trail use/rail banking" agreement was entered into by July 1, 1994, then the UP was allowed to abandon the Stromsburg branch;

(d) Any "interim trail use/rail banking" agreement was to be "subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way";

(e) Any "interim trail use/rail banking" agreement was to require "the trail user to assume, for the term of the agreement, full responsibility for management of any legal liability arising out of the transfer or use" of the right-of-way and for payment of any and all taxes that may be levied (unless the user was immune from liability, in which case it need only indemnify UP from any potential liability);

4. On April 13, 1994 the UP made a detailed written offer to the Nebraska Trails Foundation, Inc., (Foundation) covering, among other things, the "interim trail use condition" imposed by the previous orders of the Interstate Commerce Commission, which offer provided in pertinent part that:

(a) The Stromsburg branch would be conveyed to the Foundation for "rail-bank interim trail use", subject to the future restoration of the Stromsburg branch to a rail line if ordered by the Interstate Commerce Commission, in which event the Foundation agreed to reconvey the Stromsburg branch to the UP (or other carrier);

(b) The offer contained a broad form waiver and release of liability in favor of the UP by the Foundation, provided "however, that this release shall not extend to any claim for contribution made against [UP] by Foundation ... in any action against Foundation ... brought by a third party....";

(c) The offer requested that the Foundation stipulate "the correct legal entity in which the Foundation desires to take title to the Property";

5. The Foundation accepted the offer in writing on April 13th, 1994, stipulating that the Lower Platte South Natural Resources District (NRD) would accept title as successor to the Foundation.

6. On April 28, 1994 the UP confirmed in writing that the offer and acceptance had been approved by the UP.

---

**1.** For purposes of resolution of these motions, it is unimportant whether the rights acquired were in fee simple subject to a reversionary interest or by easement or in some other fashion. It is only critical to know for purposes of these motions that the UP acquired rights to use the land for railroad purposes.

7. The NRD is a political subdivision of the State of Nebraska.

## II.

Congress adopted section 1247(d) of the Act to implement its policy of preserving railroad rights-of-way for future reactivation to rail service and to promote the public interest in recreational trails. *Preseault v. I.C.C.*, 494 U.S. 1, 6–8, 110 S.Ct. 914, 919, 108 L.Ed.2d 1 (1990). The Act provides that dedication of rail lines to interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d).

The question in this case is *not* whether the orders of the ICC constitute a "taking". If this case posed such a question, plaintiffs could seek redress under the Tucker Act. *Preseault*, 494 U.S. at 14, 110 S.Ct. at 923. But plaintiffs seek no compensation under the Tucker Act or otherwise.

The question in this case is *not* whether the section 1247(d) is unconstitutional. If this case posed such a question, while this court might have jurisdiction, plaintiffs would probably lose since the Supreme Court has found the section 1247(d) constitutional. *Preseault*, 494 U.S. at 17–19, 110 S.Ct. at 924–925. In any event, plaintiffs do not challenge the constitutionality of the Act.

Rather this case poses the question of whether the trail use/rail banking agreement entered into by some of the defendants complies with the orders of the Interstate Commerce Commission. Plaintiffs argue that the agreement does not comply with the orders because the NRD and not the Foundation will take title to the real estate and because the release of liability language of the agreement is not unlimited.

If the agreement complies with the orders, then section 1247(d) of the Act mandates that there has been no "abandonment" under state law and plaintiff's quiet title action fails because there has been no act which triggers the reversionary clauses of the various title documents under which plaintiffs assert their claims. If the agreement fails to comply

with the orders, then, at least arguably, there has been an "abandonment", plaintiffs' reversionary interests have been triggered and thus plaintiffs interests may be superior to the interests conveyed to the Foundation and the NRD by virtue of the agreement.

 Because the "conditions" of the Commission's orders obviously mandate that the Commission's regulatory mission was not at an end when it issued the orders [2], federal law preempts state law on the threshold question of whether the agreement is effective to invoke the anti-abandonment provisions of section 1247(d). *See e.g., Hayfield N. R.R. Co. v. Chicago and N.W. Transp. Co.*, 467 U.S. 622, 633 & n. 11, 104 S.Ct. 2610, 2617 n. 11, 81 L.Ed.2d 527 (1984) (where the ICC places a "postabandonment condition" in its order, the ICC's mission is not at an end, the States may not undo the very purpose for which the Commission authorized an abandonment and federal law would preempt contrary State action.) Since state law is preempted, this court must then consider whether it has jurisdiction.

 In a very similar case, the United States Court of Appeals for the Eighth Circuit has affirmed a district court's holding that actions attacking the underlying order of the Interstate Commerce Commission granting a certificate of interim trail use may not be brought in the federal district courts if the basis of the attack is non-constitutional. *Glosemeyer v. Missouri–Kansas–Texas R.R. Co.*, 685 F.Supp. 1108, 1112 (E.D.Mo.1988), *aff'd* 879 F.2d 316, 320–21 (8th Cir.1989) *cert. denied* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990).

In that case, involving a quiet title action, first commenced in state court but removed to federal court, challenging an order of the Interstate Commerce Commission granting a Certificate of Interim Trail Use (CITU), the district court held that it would take jurisdiction over the constitutional challenge to section 1247(d). 685 F.Supp. at 1112. But the court also concluded that the: "Court is without jurisdiction to consider their challenge to the ICC's ... order of March 6, 1987 apply-

---

2. For example, the orders explicitly provide that the Commission can reactivate the rail line.

124

ing § 1247(d) and the implementing regulations to the M–K–T right-of-way." *Id.* The court noted that under 28 U.S.C. § 2321 proceedings to "enjoin or suspend, in whole or in part, ... [an] order of the Interstate Commerce Commission" shall be brought in the court of appeals. *Id.* Accordingly, the district court dismissed the action save for the constitutional challenge to the statute. *Id.*

On appeal the United States Court of Appeals for the Eighth Circuit agreed that the district court "did not have subject matter jurisdiction over plaintiff's challenge to the ICC's decision to grant the CITU...." *Glosemeyer,* 879 F.2d at 320. The Circuit Court noted that the federal circuit courts, not the district courts, have exclusive jurisdiction to consider challenges to final orders of the Commission under the provisions of 28 U.S.C. §§ 2321 and 2342. *Id.*

■ While this case is different than *Glosemeyer* in that plaintiffs do not mount a facial challenge to the orders of the Commission, but rather challenge whether the UP has complied with the orders, the distinction does not make a difference. At bottom plaintiffs seek to "suspend" the effectiveness of the Commission's orders. For example, plaintiffs' quiet title action if successful would as a practical matter "suspend" the Commission's order that retained for the Commission the power to reactivate the rail line. Thus, this court lacks subject matter jurisdiction to do indirectly what it could not do directly.

Accordingly,

IT IS ORDERED that the motions for summary judgment (filing 16 in CV 94–3114 and filing 17 in CV 94–3115) are granted, and judgment shall be entered by separate document providing that plaintiffs' complaints are dismissed because the court lacks subject matter jurisdiction.