Leonard DAVE; Bill and Mary Giersch; Louise Mattson; Stan and Noreen Crocker; B.J. Kessinger; Hank Dane and Kay Harrigan; Sam Humphries; and Bud Tucker; Plaintiffs,

v.

RAILS TO TRAILS CONSERVANCY, a non-profit District of Columbia Corporation; Cleve Pinnix, Director, Washington State Parks and Recreation Commission, in his Individual Capacity; Queenie Allado; Robert Petersen; Anne Cox Preecs; Glenna Hall; Bruce Hilyer; John Shreve; Melvin Wortman, Commissioners, Washington State Parks and Recreation Commission, in their Individual Capacity; Defendants.

No. CY–94–3050–AAM.

United States District Court, E.D. Washington.

Sept. 28, 1994.

---

Michael E. Haglund, Shay S. Scott, Haglund & Kirtley, Portland, OR, for plaintiffs.

Matthew Cohen, Carole Rafferty, Heller, Ehrman, White & McAuliffe, Andrea C. Ferster, Gen. Counsel, Seattle, WA, for defendant Rails to Trails Conservancy.

Asst. Atty. Gen. Joseph Earl Shorin, III, Office of Atty. Gen., Olympia, WA, for all other remaining defendants.

## ORDER OF DISMISSAL

McDONALD, District Judge.

Before the Court are the Motion of Rails to Trails Conservancy to Dismiss Plaintiffs' First and Second Claims for Lack of Subject Matter Jurisdiction, or in the Alternative, for Partial Summary Judgment, Ct. Rec. 19; and Plaintiffs' Motion for Partial Summary Judgment, Ct. Rec. 23. On hearing with oral argument, Plaintiffs were represented by Michael E. Haglund and Shay S. Scott of Haglund & Kirtley, Portland, Oregon. Defendant Rails to Trails Conservancy was represented by Matthew Cohen and Carole Rafferty of Heller, Ehrman, White & McAuliffe, Seattle, WA; and Andrea C. Ferster, General Counsel for Rails to Trails Conservancy. The remaining defendants were represented by Assistant Attorney General Joseph Earl Shorin III of Olympia, Washington. (The remaining defendants joined in Rails to Trails' motion.)

### A. SUMMARY

In their first two claims, plaintiffs seek review of a final order of the Interstate Commerce Commission. Because review is exclusively vested in the courts of appeal, this Court lacks subject matter jurisdiction over these claims. They are dismissed. The motions for summary judgment on plaintiffs' first two claims are denied as moot.

Plaintiffs' remaining claims are dismissed for failure to meet the $50,000 jurisdictional requirement. RTC's counterclaim is dismissed for identical reasons.

### B. PARTIES

Plaintiffs are eight sets of landowners in Klickitat County, Washington. Until 1992 and 1993, Burlington Northern Railroad Company ("the Railroad", not a party) oper-

ated a railroad across or adjoining plaintiffs' properties.[1]

Defendant Rails to Trails Conservancy ("RTC") is a non-profit District of Columbia corporation that converts inactive railroad corridors into recreational trails.

The remaining defendants are the director and commissioners of the Washington State Parks and Recreation Commission ("the Commission").

## C. BACKGROUND

*The Trails Act.* The National Trails System Act, 16 U.S.C. § 1241, was designed to establish recreational trails in urban areas as well as "within scenic areas and along historic travel routes of the Nation." 16 U.S.C. § 1241(a). The Act described various ways that the Secretary of the Interior could acquire land for trails. Among the methods provided was interim use of railroad rights-of-way:

> [I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the [Interstate Commerce] Commission shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use....

> [A]ny and all right, title, interest, and estate of the United States in all [railroad] rights-of-way ... shall remain in the United States upon the abandonment of forfeiture of such rights-of-way, or portions thereof....

> All such retained rights-of-way, or portions thereof [retained by the U.S. pursuant to the previous paragraph], which are located outside the boundaries of a conservation system unit or National Forest which the Secretary of the Interior determines suitable for use as a public recreational trail or other recreational purposes shall be managed by the Secretary for such uses....

16 U.S.C. § 1247(d), 1248(c) and 1248(d)(3). The U.S. Supreme Court explains:

> Section 8(d) [16 U.S.C. § 1247(d) ] provides that a railroad wishing to cease operations along a particular route may negotiate with a State, municipality, or private group that is prepared to assume financial and managerial responsibility for the right-of-way. If the parties reach agreement, the land may be transferred to the trail operator for interim trail use, subject to ICC-imposed terms and conditions; if no agreement is reached, the railroad may abandon the line entirely and liquidate its interest.

*Preseault v. I.C.C.,* 494 U.S. 1, 6–7, 110 S.Ct. 914, 919, 108 L.Ed.2d 1 (1990) (footnotes omitted).

*Abandonment and Interim Trail Use of the Rail Corridor at Issue.* In 1991 the Railroad petitioned the Interstate Commerce Commission (ICC) for permission to abandon 28.3 miles of its line between Klickitat and Goldendale, Washington. During the ICC's consideration of the petition, the Klickitat County Board of County Commissioners petitioned the ICC to prohibit sale of the line for 180 days, to enable the local communities and the state to acquire a right-of-way for a public use of the line. On February 7, 1992[2], the ICC granted the Railroad permission to abandon[3], but imposed the requested public use condition.

---

**1.** Plaintiffs' title to the land under the railroad corridor is disputed and is not resolved by the Court.

**2.** Dates of ICC decisions are given as dates of service of the decision, as per ICC practice, as the decision becomes effective upon service.

**3.** *I.e.,* granted an exemption under 49 U.S.C. § 10505 from the requirements of §§ 10903–

On April 3, 1992, the ICC served a Decision and Notice of Interim Trail Use or Abandonment ("NITU"). It noted that the Railroad was willing to enter negotiations with the City of Goldendale "for interim trail use and rail banking of the line pursuant to the National Trails System Act (Trails Act), 16 U.S.C. 1247(d)." Decision and Notice of Interim Trail Use or Abandonment, Exhibit B to Ct.Rec. 21, at 1. The ICC ordered:

> [The Railroad] may discontinue service . . . and salvage track and material consistent with interim trail use/rail banking. . . . If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for management of, any liability arising out of the transfer of use (if the user is immune from liability, it need only indemnify [the Railroad] against any potential liability), and the payment of any taxes that may be levied or assessed against the right-of-way. . . . Interim trail use/rail banking is subject to the future restoration of rail service. . . . If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented. If no agreement is reached by the 180th day, [the Railroad] may fully abandon the line.

NITU, at 2. (The ICC later extended the deadline for reaching an interim trail use agreement to September 25, 1993.)

In a similar proceeding in 1992, the Railroad petitioned the ICC for permission to abandon a 13.9 mile line between Lyle and Klickitat, adjoining the 28.3 mile line between Klickitat and Goldendale. RTC filed a request for interim trail use/rail banking. In a NITU served May 12, 1993, the ICC granted the Railroad permission to abandon. The ICC again imposed a public use condition with a deadline of September 25, 1993.

In August, 1993, the Railroad entered into a purchase agreement with RTC. (The Railroad did not enter into an agreement with the City of Goldendale.) Under the agreement, RTC accepted ownership of and arranged for management of a 30.42 mile section of the two lines (comprising 17 miles of

10904 (prior approval required for abandonment

the 28.3 mile line and 13.42 miles of the 13.9 mile line). The transaction closed in October, 1993. RTC advised ICC of the agreement on October 25, 1993.

On April 12, 1994, RTC quitclaimed its interest in the 30.42 mile section to the Commission. RTC and the Commission then sought to have the NITUs vacated for the portions of the lines that would not be rail banked. Accordingly, the ICC partially vacated and reissued its NITUs on July 6, 1994:

> [T]he NITU served April 3, 1992, is vacated [for the 11.3 mile section the Railroad did *not* sell to RTC] and [the Railroad] may abandon that portion of the line. The NITU is reissued to permit interim trail use/rail banking on [the 17 mile section the Railroad sold to RTC]. . . . [T]he NITU served May 12, 1993, is vacated [for the 0.48 mile section the Railroad did *not* sell to RTC] and [the Railroad] may abandon that portion of the line. The NITU is reissued to permit interim trail use/rail banking on [the 13.42 mile section the Railroad sold to the Commission]. . . .

> [The Railroad] may discontinue service . . . and salvage track and related materials consistent with interim trail use/rail banking. . . . If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for management of, for any liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify [the Railroad] against any potential liability), and for the payment of any taxes imposed on the rights-of-way. . . . Interim trail use/rail banking is subject to the future restoration of rail service. . . . If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented. If no agreement is reached by the 180th day, [the Railroad] may fully abandon the lines.

of railroad).

Decision and Notice of Interim Trail Use or Abandonment, attached as Exhibit C to Ct. Rec. 21, at 2–3.

The Commission and/or RTC now are in the process of developing a public trail on the 30.42 mile rail corridor.

*Litigation.* On April 27, 1994, just prior to the ICC's reissuance of the NITUs, plaintiffs sued RTC and individual officers of the Commission. Plaintiffs claim that the Railroad owned easements over their properties; that the plaintiffs have state-created reversionary property interests in the land under the easements; that the Railroad abandoned its rail line and easements; and that plaintiffs' reversionary interests became possessory when the Railroad abandoned the easements. Plaintiffs claim that: (1) all defendants violated plaintiffs' civil rights under 42 U.S.C. § 1983, because defendants' acts constituted a taking of private property without just compensation, in violation of the Fifth Amendment; (2) all defendants violated the National Trails System Act, 16 U.S.C. § 1247(d), by not acquiring the rights to the rail corridor through negotiation and/or condemnation; (3) RTC committed conversion against plaintiffs Giersch by destroying a livestock gate on the Giersch's property; (4) RTC committed trespass against plaintiff Humphries by unlawfully entering his property; and (5) RTC committed nuisance against plaintiff Tucker by damaging Tucker's access road. Plaintiffs seek declaratory and injunctive relief for their first two claims, and monetary damages for their remaining three claims.

All defendants have answered. RTC also counterclaims for declaratory judgment, and trespass by the Giersches in blocking access to the rail corridor with a gate. RTC seeks declaratory judgment (of RTC's ownership) and monetary relief.

RTC now moves to dismiss plaintiffs' first and second claims for lack of subject matter jurisdiction, or in the alternative for partial summary judgment in its favor on these claims. The Commission joins in RTC's motion. Plaintiffs move for partial summary judgment in their favor on their first and second claims.

## D. SUBJECT MATTER JURISDICTION

■ The Court first examines its subject matter jurisdiction.

*Party Contentions.* RTC contends that plaintiffs' complaint, although addressed to RTC and the Commission, is actually a collateral attack on the ICC NITU orders that permitted interim trail use/rail banking on the rail corridor. RTC contends that the federal courts of appeal have exclusive jurisdiction under 28 U.S.C. § 2342 (the Hobbs Act) to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" ICC orders.

Plaintiffs contend in response that they are not collaterally attacking ICC orders. They do not challenge the ICC's determination that abandonment occurred; they agree that abandonment occurred (under state law). Rather, they challenge the effect of abandonment: whether their reversionary property interests become possessory (under state law) rather than being postponed (under § 1248).

RTC contends in reply that plaintiffs challenge the ICC orders by asking the Court to prohibit defendants from doing precisely what the ICC authorized them to do. They contend that the NITU orders plainly authorized RTC and the Commission to implement interim trail use on the rail corridor, so plaintiffs' contention that implement trail use is not authorized (because of plaintiffs' reversionary interests) is a challenge to the NITU orders.

*Analysis.* The Hobbs Act provides:

The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

... all rules, regulations, or final orders of the interstate Commerce Commission made reviewable by section 2321 of this title and all final orders of such Commission made reviewable under section 11901(j)(2) of title 49, United States Code ...

28 U.S.C. § 2342.

The ICC's NITU orders of April 3, 1992; May 12, 1993; and July 6, 1994 were final

because they decided finally the Railroad's petition to abandon. *See also, Seaboard Coast Line R. Co. v. United States,* 422 F.Supp. 177 (E.D.Va.1976) (ICC's decision to dismiss portion of railroad's application for abandonment was a final order). It is true that the ICC's decision was conditional: if an interim agreement was reached, then interim trail use could be implemented, otherwise the Railroad could fully abandon the line. However, the ICC did not intend to, and did not, enter a subsequent order determining whether the condition of agreement had been fulfilled. *See Preseault,* 494 U.S. at 7 n. 3, 110 S.Ct. at 919 n. 13 ("If agreement is reached, interim trail use is thereby authorized. If not, the ... NITU *automatically* converts into an effective certificate or notice of abandonment.") (emphasis added). The ICC entered final, alternative relief to the Railroad depending on whether the condition was fulfilled.[4]

Section 2321 provides that "a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals ..."[5]

Thus, actions to enjoin or determine the validity of the ICC's NITU orders can be brought only in the court of appeals. If plaintiffs' complaint seeks injunction or review of the NITU orders, then this Court does not have subject matter jurisdiction over those claims.

Plaintiffs' first claim is that all defendants violated plaintiffs' civil rights under 42 U.S.C. § 1983, because defendants' acts constituted a taking of private property without just compensation, in violation of the Fifth Amendment. "Defendants' acts" were the preparation for and institution of interim trail use.[6] The NITUs provided that "If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented." The NITUs did *not* condition interim trail use on compensation to plaintiffs. Plaintiffs challenge defendants' implementation of interim trail use without compensation; that authority was granted by the ICC NITU orders. Therefore, plaintiffs' first claim seeks injunction or review of the NITU orders.

Plaintiffs' second claim is that all defendants violated the National Trails System Act, 16 U.S.C. § 1247(d), by not acquiring the rights to the rail corridor through negotiation and/or condemnation, or by not accepting legal liability (including the duty to pay compensation to plaintiffs) for the rights. The NITUs provided defendants with the rights to the rail corridor. The NITUs did *not* condition these rights on negotiation with or compensation to plaintiffs. Plaintiffs challenge defendants' procedure in acquiring these rights; the procedure was the NITU orders. Therefore, plaintiffs' second claim seeks injunction or review of the NITU orders.[7]

4. Plaintiffs contend that the condition of *timely* agreement was not fulfilled. That challenge is a direct challenge to the ICC's application of its own conditional order, which is an indirect challenge to the ICC's conditional order. If the ICC does not have a mechanism for challenges to its administration, then plaintiffs' only recourse is to appeal the order itself in federal appeals court.

5. Section 11901(j)(2) concerns orders regarding performance standards for common carriers and is irrelevant.

6. Plaintiffs argued at hearing and in the instant pleading, although not in their complaint, that the defendants took more land than was covered by the railroad easements. They argue that the proposed recreational trail is "incompatible" with the plaintiffs' land use and is more intrusive than was a railroad. Specifically, they contend that trail use will spread the star thistle plant, adversely affect religious ceremonies at an Indi-

an cemetery on plaintiff Dave's land, and adversely affect Dave's fishing on the nearby river. However, by these expanded takings allegations the plaintiffs challenge the *effect* of interim trail use, as instituted by defendants under the authority of the NITUs. They do not allege a taking beyond that authorized by the NITUs.

7. Plaintiffs argue that they seek to *enforce*, not suspend, that portion of the NITUs that requires defendants to assume responsibility for any liability arising out of the interim trail use agreement. They argue that the Hobbs Act does not require an enforcement action to be brought in the appellate courts. Plaintiffs are incorrect. First, the Hobbs Act broadly describes jurisdiction "to determine the validity of" ICC orders. An action to determine whether defendants' assumption of liability includes liability for taking, is an action to determine the validity of the NITUs that ordered defendants' assumption of

*Conclusion.* Plaintiffs' first and second claims seek injunction or review of final ICC orders. Proceedings to enjoin or review final ICC orders can be made only in the federal courts of appeals. Therefore, this Court has no jurisdiction over plaintiffs' first and second claims, and these claims must be dismissed.[8,9]

## E. DISMISSAL OF REMAINING CLAIMS

■ After dismissal of plaintiffs' first and second claims, plaintiffs' three claims remaining are for conversion, trespass and nuisance, for which plaintiffs request $9,000 monetary relief. These are state common law claims. This Court has jurisdiction over these claims only if there is diversity of citizenship between the parties and the matter in controversy exceeds $50,000. 28 U.S.C. § 1332(a)(1).

Here, there is diversity of citizenship; plaintiffs are Washington residents, and RTC is a District of Columbia corporation. However, plaintiffs do not meet the monetary jurisdictional requirement.[10] Therefore,

liability. Second, even if the Hobbs Act does not describe enforcement actions, plaintiffs do not seek mere enforcement. They challenge the ICC's grant of rights without a provision for compensation to plaintiffs. Plaintiffs thus seek to "suspend in part" the NITUs that granted the rights, an action that under the Hobbs Act must be brought in an appellate court.

8. Other courts have held or implied that the Hobbs Act precludes district courts from hearing challenges—even indirect challenges—to ICC orders. *See, e.g., Glosemeyer v. Missouri–Kansas–Texas R.R.,* 879 F.2d 316, 320 (8th Cir.1989) (where plaintiff landowners sued railroad in district court and interim trail users intervened, "[b]ecause no administrative action had been taken at the time plaintiffs' complaint had been ... filed in federal district court, the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 to decide plaintiffs' facial challenge to the constitutionality of § 1247(d)."), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990); *Schneider v. Union Pacific Railroad Co.,* 864 F.Supp. 120 (D.Neb.1994), at 124 (where plaintiff landowners sued railroad in district court, "plaintiffs ... challenge whether the [railroad] has complied with the [ICC] orders.... At bottom plaintiffs seek to 'suspend' the effectiveness of the [ICC]'s orders.... Thus, this court lacks subject matter jurisdiction to do indirectly what it could not do directly."); *Victor Oolitic Stone Co. v. CSX Transp. Inc.,* 852 F.Supp. 721, 723 (S.D.Ind. 1994) (where plaintiff landowners sued the railroad and interim trail users in district court, "Plaintiffs explain ... [that] the [ICC] was divested of jurisdiction upon the consummation of the abandonment of the railroad corridor.... That, of course, begs the question since the result that Plaintiffs seek assumes that the ICC decision is a nullity.... Because the court of appeals has exclusive jurisdiction over challenges to ICC orders, including collateral attacks, this Court lacks jurisdiction to resolve counts I & II of the Plaintiffs' amended complaint.").

9. At hearing, the Court mentioned the recent case of *Mace v. Skinner,* 34 F.3d 854 (9th Cir. 1994). In *Mace,* the plaintiff challenged the revocation of his aircraft mechanic's certificate by the Federal Aviation Administration ("FAA"), the National Transportation Safety Board ("Board") and the Department of Transportation ("DOT"). The district court denied review of the decision, stating that jurisdiction to review Board decisions was vested exclusively in the appellate courts. 49 U.S.C. App. § 1486(d) ("[T]he court[s of appeals] shall have exclusive jurisdiction to affirm, modify, or set aside the [Board] order ... and if need be, to order further proceedings by the Board"). The Ninth Circuit vacated the order of dismissal for three reasons:

> Mace is seeking to recover damages, a remedy not found among the possibilities of "affirm[ing], modify[ing], or set[ting] aside the order complained of." *See* 49 U.S.C.App. § 1486(d). More importantly, although Mace's claims stem from the revocation of his certificate, they constitute a broad challenge to the allegedly unconstitutional actions of the FAA, NTSB, and DOT. Finally, ... his complaint is not based on the merits of any particular revocation order.

34 F.3d at 858 (footnote omitted).

*Mace* can be distinguished from the instant case, on these three reasons. First, plaintiffs here seek injunction and declaratory relief, remedies specifically described by the Hobbs Act ("The court of appeals ... has exclusive jurisdiction to enjoin, ... or to determine the validity of" ICC orders). Second, plaintiffs' claims stem narrowly from the ICC orders; plaintiffs do not otherwise challenge ICC or defendants' actions. (But for the NITUs, and defendants' actions pursuant to the NITUs, plaintiffs would have no complaint.) Third, plaintiffs' claims challenge the merits of particular ICC orders (*i.e.,* they challenge ICC's grant of rights to defendants without provision for compensation to plaintiffs).

10. Plaintiffs contended at hearing that the amount in controversy on these three claims *does* exceed $50,000, due to unexplained "new discoveries" in the case. The Court disregards this

plaintiffs' remaining claims must be dismissed for lack of subject matter jurisdiction.

After dismissal of plaintiffs' complaint, there remains RTC's countercomplaint. RTC's first claim seeks declaratory judgment that it was the exclusive, rightful owner of the rail corridor at the time the Railroad transferred the rail corridor to RTC (until RTC transferred it to the Commission). This is effectively a declaration of "non-taking." For the same reasons that this Court lacks jurisdiction over plaintiffs' taking claims, it lacks jurisdiction over RTC's "non-taking" claim. This claim must be dismissed.

RTC's second and final claim alleges trespass in an undetermined amount. RTC admitted at hearing that this amount does not equal or exceed $50,000. Therefore, RTC does not meet the monetary jurisdictional requirement for diversity jurisdiction, and this claim must be dismissed.

**IT IS HEREBY ORDERED:**

1. The Motion of Rails to Trails Conservancy to Dismiss Plaintiffs' First and Second Claims for Lack of Subject Matter Jurisdiction, or in the Alternative, for Partial Summary Judgment, is **GRANTED IN PART** (dismissing plaintiffs' first and second claims) and **DENIED AS MOOT IN PART** (regarding summary judgment on plaintiffs' first and second claims). Plaintiffs' first and second claims are **DISMISSED WITHOUT PREJUDICE.**

2. Plaintiffs' Motion for Partial Summary Judgment is **DENIED AS MOOT** (regarding summary judgment on plaintiffs' first and second claims).

3. Plaintiffs' remaining claims are **DISMISSED WITHOUT PREJUDICE.**

4. RTC's counterclaims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

---

contention because plaintiffs' complaint at the time of hearing explicitly requested only $9,000 relief. Further, by no stretch of the imagination could the facts alleged in these three claims (*i.e.*, destruction of a livestock gate, unlawful trespass and damage to an access road) be worth $50,000. Should plaintiffs believe that new facts (*e.g.*, further property destruction) create a $50,000 claim against the defendants, then they can file a new complaint.