SIXTH DIVISION

October 31, 2003

No. 1-02-1762

PHILIP J. SERPICO, an Individual, and ) Appeal from the

PHIL'S SPORTS BAR, INC., an Illinois Corporation, ) Circuit Court of

) Cook County.

Plaintiffs-Appellants, ) 

)

v. ) No. 01 CH 17896

) 

THE VILLAGE OF ELMWOOD PARK, a Municipal )

Corporation of the State of Illinois; PETER N. )

SILVESTRI, Village President of the Village of Elmwood )

Park, not Individually but in His Official Capacity; and )

THOMAS BRAGLIA, Chief of Police of the Village of )

Elmwood Park, not Individually but in His Official )

Capacity, ) The Honorable

) Sophia H. Hall,

Defendants-Appellees. ) Judge Presiding.

JUSTICE SMITH delivered the opinion of the court:

Plaintiffs Phillip Serpico and Phil's Sports Bar, Inc. (plaintiffs or as named), filed a complaint for declaratory judgment against defendants Village of Elmwood Park, Peter Silvestri and Thomas Braglia (defendants or as named), seeking to 
declare invalid Ordinance 2001-08 prohibiting "simulated video gaming devices" in the village.  Village of Elmwood Park Ordinance 2001-08 (eff. May 21, 2001).  Although the trial court initially granted a preliminary injunction in favor of plaintiff staying the enforcement of the ordinance, the court ultimately reversed this ruling, granted defendants' motion for summary judgment and found the ordinance to be constitutionally valid.  Plaintiffs appeal from the court's grant of summary judgment, contending that video gaming devices possess first amendment protections and that the ordinance does not survive either the strict scrutiny or rational basis test for purposes of determining its constitutionality.  Plaintiffs ask that we find the ordinance unconstitutional on its face and reverse the trial court's decision or, alternatively, that we remand with an order staying  enforcement of the ordinance pending further findings by the trial court.  For the following reasons, we affirm.

BACKGROUND

In May 2001, defendants passed Ordinance 2001-08 (the ordinance), which prohibits anyone from keeping or maintaining simulated video gaming devices within village limits.  Specifically, section 39-26 of the ordinance states:

"It shall be unlawful for any person, firm or corporation to keep, locate, maintain or operate any simulated video or mechanical gaming device within the Village."  Village of Elmwood Park Ordinance 2001-08, §39-26 (May 21, 2001).

Section 39-25(b) defines these devices as follows:

"The term 
'simulated video or mechanical gaming devices'
 means any video poker machine, video or mechanical slot machine ***, video or mechanical bingo machine, or other device which involves any game of chance or amusement based upon poker, blackjack, dog racing, or horse racing, craps, any card or dice game, or any similar device operated by means of the insertion of a coin, token, slug currency, or similar object."  Village of Elmwood Park Ordinance 2001-08, §39-25(b) (May 21, 2001).

Plaintiff Serpico owns and operates plaintiff Phil's Sports Bar located in the village, and maintained two video slot machines in the bar at the time the ordinance was enacted.  After removing the machines, plaintiffs filed a complaint for declaratory judgment, which they subsequently amended.  This complaint claimed that the ordinance was unconstitutional because it was vague, overbroad and violated their rights of free speech, equal protection and due process; that its enactment exceeded defendants' police powers; and that defendants were estopped from enforcing it.  Plaintiffs also filed a motion for preliminary injunction and a temporary restraining order.  

The trial court denied plaintiff's motion for the temporary restraining order and continued the motion for preliminary injunction.  Meanwhile, defendants moved to dismiss the cause.  The trial court denied defendants' motion, and the cause proceeded through discovery.

On March 7, 2002, the trial court held an evidentiary hearing with respect to plaintiffs' motion for preliminary injunction, wherein four witnesses testified.  Defendant Braglia testified that he is the police chief of the village.  He admitted that, under the terms of the ordinance, certain devices that could be used for gambling would not be prohibited because they do not meet the definition of section 39-25(b), while other devices that may not always be used for gambling would in fact be prohibited because they do meet the definition of section 39-25(b).  Chief Braglia stated that prior to the ordinance's enactment, there were 15 arrests for possession and maintenance of video gaming devices.  He further testified that while anything can be gambled upon, the types of devices listed in section 39-25(b) were, in his experience as police chief, those most often used for gambling and illegal gaming.  Defendant Silvestri, the president of the village, also testified.  He stated that while it was possible that some video gaming devices would be banned even though they may not be used for gambling, the ordinance was intended to ban those types of machines and video devices generally used for gambling located in bars and other public places.  He testified that the village did not have an interest at this time in enforcing the ordinance against private citizens, unless they were violating laws with respect to gambling.  President Silvestri noted that the focus of the ordinance was to prevent illegal gaming in public locations, which was the basis for some nine arrests in the village since 1999.  Robert Signorelli, a vice unit investigator, testified that between October 1998 and July 1999, before the enactment of the ordinance, eight police raids were conducted and resulted in several arrests for illegal gaming in the village.  One of the raids occurred at plaintiffs' bar, where one of plaintiffs' video slot machines was being used to facilitate illegal gambling.  Officer Signorelli further testified that the other seven raids conducted before the enactment of the ordinance involved video poker machines, as specified in section 39-25(b).  

Plaintiff Serpico also testified at the evidentiary hearing.  He stated that he had been operating two video slot machines before he received notice from defendants that these would now be prohibited under the ordinance.  Plaintiff Serpico testified that when he removed the machines, he lost revenue at his bar.  Plaintiff Serpico admitted that the video slot machines did not have characters or storyline plots, but rather, a patron needed only to pull a lever and certain figures inside the machine would spin for an accumulation of points.  He further admitted that in 1999, a raid was conducted at his bar, wherein it was uncovered that his bartender was conducting payouts to patrons who used the video slot machines and accumulated a certain number of points.  

Following this testimony, the trial court granted plaintiffs' motion for preliminary injunction, finding that they had a protectible right and a likelihood of success on the merits of their cause.  The court further concluded that the ordinance was vague and overbroad, that it violated plaintiffs' due process rights, and that plaintiffs would sustain irreparable harm if the ordinance was enforced.  Thus, the court ordered defendants not to enforce the ordinance as against plaintiffs.  

On April 12, 2002, at the suggestion of the trial court, plaintiffs and defendants filed cross-motions for summary judgment.  On May 16, 2002, after a hearing, the trial court issued an order reversing its prior ruling, vacating the preliminary injunction, and granting defendants' motion for summary judgment.  The court held that the ordinance, as drafted on its face, was constitutional.  With respect to section 39-25(b), the court stated that this section was "very specific about the games that are involved" and that there was an overall "reasonable specificity within this ordinance" to determine which video gaming devices are prohibited.  Thus, the court declared that the ordinance was not vague or overbroad.  The court further concluded that "the first amendment certainly does not apply" here because there was "[n]o evidence *** presented in that regard" by plaintiffs.  Since no fundamental rights were implicated, the court performed a rational basis test and held that the ordinance "does bear [a] rational relationship to [a] legitimate government [interest] for purposes of regulating gambling" in the village.  Accordingly, because the ordinance did not violate constitutional principles and defendants did not supersede their police powers, the court found that there was no basis for estoppel or for the prevention of the ordinance's enforcement in the village.

ANALYSIS

Plaintiffs contend on appeal that the trial court erred in granting defendants' motion for summary judgment because it is clear that the ordinance is unconstitutional.  Plaintiffs assert that video gaming devices, as defined in section 39-25(b) of the ordinance, possess first amendment implications that require protection.  Plaintiffs further assert that, as such, the ordinance does not survive the strict scrutiny test that courts must employ in this situation because defendants do not have a compelling interest in eliminating these video gaming devices and there are other, less intrusive actions defendants could have taken here.  Alternatively, plaintiffs claim that even if these video gaming devices do not have first amendment implications, the ordinance does not survive the less rigorous rational basis test, as it is vague and violative of equal protection principles.  

A.  Standard of Review

We note again for purposes of this appeal that plaintiffs challenge the trial court's grant of summary judgment in favor of defendants.  The purpose of summary judgment is to determine whether a question of fact exists.  See 
Addison v. Whittenberg
, 124 Ill. 2d 287, 294 (1988).  This relief is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See 
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001); accord 
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  While summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' "  
Morris
, 197 Ill. 2d at 35, quoting 
Purtill
, 111 Ill. 2d at 240
.  Appellate review of a trial court's grant of summary judgment is 
de novo
 (
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992)
), and reversal will occur only if we find that a genuine issue of material fact exists (see
 
Addison
, 124 Ill. 2d at 294).
(footnote: 1)
 We further note that a municipal enactment, such as the ordinance in the instant case, enjoys a presumption of validity.  See 
Chavda v. Wolak
, 188 Ill. 2d 394, 398 (1999); 
Greyhound Lines, Inc. v. City of Chicago
, 24 Ill. App. 3d 718, 723 (1974); see also 
People ex rel. Lumpkin v. Cassidy
, 184 Ill. 2d 117, 123 (1998) (constitutionality is to be presumed).  To overcome this presumption, the party challenging the ordinance, namely, plaintiffs here, must show by clear and affirmative evidence that the ordinance is "arbitrary, capricious, or unreasonable; that there is no permissible interpretation of the enactment that justifies its adoption; or that the enactment will not promote the safety and general welfare of the public."  
Chavda
, 188 Ill. 2d at 398-99; 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 723 (stating same); see 
City of Des Plaines v. Gacs
, 65 Ill. App. 3d 44, 48 (1978) (challenger must establish that ordinance is "palpably arbitrary, capricious, and unreasonable and bears no rational relationship to the health and safety of the community").  This is a heavy burden.  See 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 723.  Accordingly, if there is any room for a legitimate difference of opinion concerning the reasonableness of the ordinance, the legislative judgment of the body that enacted it must prevail.  See 
City of Des Plaines
, 65 Ill. App. 3d at 48; accord 
Lumpkin
, 184 Ill. 2d at 123 (court should uphold validity if reasonably possible).   

Plaintiffs' primary contention on appeal is that the video gaming devices as defined in section 39-25(b) of the ordinance possess first amendment implications which merit first amendment protections.  Plaintiffs provide us with a discussion tracking the evolution of gaming devices and insist that these have now transformed into a medium of protected expression.  As such, plaintiffs contend that the ordinance must meet the requirements of the strict scrutiny test of constitutionality in order to "survive" and, under the circumstances present, the ordinance fails and is therefore unconstitutional.  We too recognize from our review of case law that some video games and gaming devices have undoubtedly evolved from nickel-and-dime-store contraptions into electronic systems which portray fantasies and storylines oftentimes more complex and visually "real" than the most popular literature or television program.  However, we disagree with plaintiffs' arguments as they apply to the circumstances before us.

B.  Video Gaming Devices and First Amendment Protections

We begin by noting the long-established principle that gambling has traditionally been closely regulated, and even forbidden, without the implication that such restrictions violate the first amendment.  See 
There To Care, Inc. v. Commissioner of the Indiana Department of Revenue
, 19 F.3d 1165, 1167 (7th Cir. 1994).  Yet, as legal doctrine concerning first amendment rights has progressed, so too has the notion that entertainment, just as political speech, enjoys first amendment protections.  See 
Kaye v. Planning & Zoning Comm'n
, 39 Conn. Supp. 170, 172, 472 A.2d 809, 810 (1983); see also 
Allendale Leasing, Inc. v. Stone
, 614 F. Supp. 1440, 1454 (D. R.I. 1985).  However, it has been decisively held that before entertainment may come within this ambit and be accorded such protected status, there must be some element of information or some idea being communicated.  See 
America's Best Family Showplace Corp. v. City of New York, Dept.
, 536 F. Supp. 170, 173 (E.D. N.Y. 1982); 
Kaye
, 39 Conn. Supp. at 172, 472 A.2d at 810 (to be protected, the entertainment "must be designed to communicate or express some idea or some information"); accord 
Allendale
, 614 F. Supp. at 1454.

In the arena of video games and video gaming devices, while the line between informing and merely entertaining may be "an elusive one" (
Allendale
, 614 F. Supp. at 1454), several courts have reached similar conclusions with respect to whether these games and devices merit first amendment protection.  Traditionally, courts blanketly held that video games were "pure entertainment with no informational element," and as such, could not be characterized as a form of speech protected by the first amendment.  
America's Best
, 536 F. Supp. at 174 ("they 'contain so little in the way of particularized form of expression' that video games cannot be fairly characterized as a form of speech protected by the [f]irst [a]mendment").  Subsequently, this notion was modified to incorporate a "context-specific" inquiry.  See 
Wilson v. Midway Games, Inc.
, 198 F. Supp. 2d 167, 181 (D. Conn. 2002).  That is, it was recognized that video games and gaming devices, as a medium of expression, must be assessed individually based on their content to determine whether they qualify for first amendment protection.  See 
Kaye
, 39 Conn. Supp. at 176, 472 A.2d at 812 ("[e]ach medium of expression *** must be assessed for first amendment purposes by standards suited to it, for each may present its own problems").  In so doing, the label "video game" lost any talismanic connotation, and no longer was an object bearing this label automatically considered devoid of speech and first amendment concerns.  See 
Wilson
, 198 F. Supp. 2d at 181; accord 
Kaye
, 39 Conn. Supp. at 175, 472 A.2d at 811 (the "question of video games as protected speech requires a factual determination of whether video games import sufficient communicative, expressive or informative elements to constitute expression protected under the first amendment"); 
Rothner v. City of Chicago
, 929 F.2d 297, 303 (1991) (not all video games can be classified as devoid of first amendment protection, but not all inherently merit this protection either).

However, the courts went further to establish a clear distinction among those video games and devices meriting first amendment protection and those which do not.  It has been specifically held that games such as pinball, bingo, blackjack and slots, whether in mechanical or simulated video form, do not constitute protected speech under the auspices of the first amendment.  See 
Wilson
, 198 F. Supp. 2d at 181 (neither "pinball machine" nor "video game that only simulate[s] a pinball machine" is protected speech); 
There To Care, Inc.
, 19 F.3d at 1167 (holding that bingo, blackjack and slots do not involve free speech concerns); accord 
Allendale
, 614 F. Supp. at 1454 (bingo is "wholly devoid of the requisite communicative and informative elements" necessary for first amendment protection).  This is because, as the courts have reasoned, the interaction and communication involved in these types of simplistic games is "singularly in furtherance of the game; it is totally divorced from a purpose of expressing ideas, impressions, feelings, or information unrelated to the game itself."  
Allendale
, 614 F. Supp. at 1454; accord 
There To Care, Inc.
, 19 F.3d at 1167 (communications required to play these games "employ vocal cords but are no more 'expression' than are such statements as '21' in a game of blackjack 
or 'three peaches!' by someone who has just pulled the handle of a one-armed bandit
" (emphasis added)).  The players unassumingly slide a token or coin into these machines and push a button or pull a lever, thereby surrendering any control they may have over the sequence of events that, in the end, yield either fortune or loss.  As such, first amendment concerns do not apply.  See generally 
Wilson
, 198 F. Supp. 2d 167; 
There To Care, Inc.
, 19 F.3d 1165; 
Allendale
, 614 F. Supp. 1440.

In direct contradistinction are those video games and devices which courts have denominated as meritorious of free speech protection.  Unlike the simplistic nature of bingo and slots, these games involve complex plots, the advancement to different levels, character development, and a "visual and auditory milieu in which [a] story line is played out."  
Wilson
, 198 F. Supp. 2d at 181 (noting first amendment protection applies to video game Mortal Kombat wherein player assumes identity of a character, engages and challenges other characters in battles, and at appropriate time as determined by player employs "finishing move" which is unique to that character); 
American Amusement Machine Ass'n v. Kendrick
,115 F. Supp. 2d 943, 952 (S.D. Ind. 2000) (
Kendrick I
), 
rev'd
 
& remanded
, 244 F.3d 572 (7th Cir. 2001) (
Kendrick II
) (video games Gauntlet Legends and Gauntlet Legacy, dealing with fantasy world of eight "realms" and where players assume roles of different "heroes," contain protected expression); see generally 
Sanders v. Acclaim Entertainment, Inc.
, 188 F. Supp. 2d 1264 (D. Colo. 2002) (in suit where the plaintiff sued several creators and manufactures of video games similar to Mortal Kombat containing plot and characters, court held that these video games deserve nothing less "than full [f]irst [a]mendment protection").  In essence, the interaction and communication required of players here involve many more concepts than those simply related to the game itself, including memory, strategy and control over the sequence of events.  See 
Wilson
, 198 F. Supp. 2d at 182 (noting that these are not comparable to the simplistic pinball machine-type games).  Because of these elements, these games are protected under the first amendment.  See 
Wilson
, 198 F. Supp. 2d at 181.  

Applying this distinction to the instant case, it is clear that, contrary to plaintiffs' contention, the video gaming devices listed in section 39-25(b) of the ordinance do not implicate first amendment protections.  As noted above, section 39-25(b) lists "any 
video poker machine, video or mechanical slot machine ***, video or mechanical bingo machine, or other device which involves any game of chance or amusement based upon poker, blackjack, dog racing, or horse racing, craps, any card or dice game, or any similar device operated by means of the insertion of a coin, token, slug currency, or similar object," as those gaming devices prohibited by the village.  Village of Elmwood Park Ordinance 2001-08, §39-25(b) (May 21, 2001).  The games operated through these devices are like those denominated by the courts as not containing an element of information or communicating some idea, such as bingo and pinball.  See generally 
Wilson
, 198 F. Supp. 2d 167; 
There To Care, Inc.
, 19 F.3d 1165; 
Allendale
, 614 F. Supp. 1440.  Rather, any communication "is singularly in furtherance of the game [and] totally divorced from a purpose of" expressing speech that would merit protection under the first amendment.  
Allendale
, 614 F. Supp. at 1454.

More specifically, we note that plaintiffs challenge section 39-25(b) principally because they maintained two video slot machines in their bar which they were required to remove due to the ordinance's enactment.  Case law has undeniably held that slots, as listed in section 39-25(b), are devoid of the requisite communicative and informative elements necessary for first amendment consideration.  See 
There To Care, Inc.
, 19 F.3d at 1167 
.  Plaintiff Serpico's own testimony supports this conclusion: he testified that the video slot machines in his bar did not have characters or storyline plots, but rather, a patron needed only to pull a lever and certain figures inside the machine would spin for an accumulation of points.  Thus, by plaintiff Serpico's own admission, one who plays these gaming devices has no control over the sequence of events in the game and does not exert any type of strategy, technique or choice which would transform these devices into a medium of expression implicating first amendment protections. 

Plaintiffs rely heavily on four cases in support of their proposition that the video gaming devices listed in section 39-25(b), specifically video slot machines, invoke first amendment concerns: 
Kendrick I
, 
Kendrick II
, 
Sanders
 and 
Wilson
.  However, these cases are distinguishable on their facts, and the legal rationale presented by those courts actually supports our conclusions here rather than plaintiffs' claims.  Factually, none of these cases deal with the type of simplistic video gaming devices listed in section 39-25(b) of the ordinance.  Rather, each case, which holds that the video games at issue therein are protected under the first amendment, involves games containing character development, complex storylines, and plot advancement wherein the player actively controls the outcome of the game.  See 
Kendrick I
, 115 F. Supp. 2d at 953 (describing the complexity of the six games at issue, including "Ultimate Mortal Kombat 3," "Maximum Force" and "Silent Scope"); 
Kendrick II
, 244 F.3d 572 (same); 
Sanders
, 188 F. Supp. 2d at 1279 (involving games similar to 
Kendrick
 cases and noting that these merit first amendment protection); 
Wilson
, 198 F. Supp. 2d at
 181 (discussing intricacies of "Mortal Kombat" wherein players control game and exercise choices to further game).  Moreover, both 
Kendrick I
 and 
Wilson
 make clear the principle that while some video gaming devices are protected under the first amendment, others are not.  See 
Kendrick I
, 115 F. Supp. 2d at 954; 
Wilson
, 198 F. Supp. 2d at 181-82.  The determining factor is not whether the game is in "video" form but, rather, whether the game's content displays a communicative or informative element.  See 
Wilson
, 198 F. Supp. 2d at 181.  The 
Wilson
 court captured the essence of the distinction perfectly:

"In sum, the cases are reconcilable on this point: While video games that are merely digitized pinball machines are not protected speech, those that are analytically indistinguishable from other protected media, such as motion pictures or books, which convey information or evoke emotions by imagery, are protected under the [f]irst [a]mendment."  198 F. Supp. 2d at 181.  

The devices challenged in the instant case clearly fall within the former classification, rather than the latter.

Accordingly, we find that, contrary to plaintiffs' claims, the video gaming devices listed in section 39-25(b) of the ordinance do not import sufficient communicative, expressive or informative elements to constitute speech protectible under the first amendment.

C.  Due Process: Strict Scrutiny Test v. Rational Basis Test

Based on their claim that the video gaming devices listed in the ordinance implicate first amendment problems, plaintiffs urge us to apply a strict scrutiny test to the ordinance, a heightened standard which would require defendants to demonstrate that the ordinance is narrowly drawn to further a sufficiently substantial and compelling governmental interest.  See 
Kaye
, 39 Conn. Supp. at 176, 472 A.2d at 812.  However, having found that the ordinance and its regulation of gaming devices as defined in section 39-25(b) do not invoke first amendment rights, we reject this argument in its entirety.  See 
Allendale
, 614 F. Supp. at 1457.

Instead, the validity of the ordinance must be measured by the lowest level of scrutiny, the rational basis test.  See 
America's Best
, 536 F. Supp. at 174; 
Allendale
, 614 F. Supp. at 1457; see also 
Lumpkin
, 184 Ill. 2d at 124.  Under this test, the ordinance will survive a substantive due process challenge so long as it is rationally related to a legitimate governmental concern.  See 
Kaye
, 39 Conn. Supp. at 176, 472 A.2d at 811-12; accord 
Lumpkin
, 184 Ill. 2d at 124 (legislation must simply be "reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety, and general welfare").  The ordinance need not embody the "best" means of resolving the government's concern or even be the most precisely drawn regulation.  See 
Allendale
, 614 F. Supp. at 1457; 
Lumpkin
, 184 Ill. 2d at 124.  Rather, these determinations are for the body enacting the ordinance, not the courts, and the burden falls upon the challengers to show that this body's judgment was unreasonable.  See 
Allendale
, 614 F. Supp. at 1457 (court must defer to legislature's judgment unless it was unreasonable; challengers bear "onerous burden"); see also 
Lumpkin
, 184 Ill. 2d at 124 (the "judgments made by the legislature in crafting a[n ordinance] are not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data").  "If there is any conceivable basis for finding a rational relationship, the [ordinance] will be upheld."  
Lumpkin
, 184 Ill. 2d at 124.  

Based on the record before us, we find that plaintiffs have failed to meet their burden of proof in establishing either that there is no legitimate governmental interest here or that the ordinance is not rationally related to such an interest.  In fact, the testimony on record clearly indicates a more than viable concern on the part of the village to control and regulate illegal gambling and gaming by prohibiting those simulated video and mechanical devices defined in section 39-25(b) of the ordinance.  Braglia testified that, in his experience as police chief of the village, the types of devices most often used for gambling and illegal gaming were those listed in section 39-25(b).  He also testified that, prior to the enactment of the ordinance, there were 15 arrests for the possession and maintenance of gaming devices used in such behavior.  President Silvestri testified that the village's intention behind the ordinance was indeed to ban those types of machines and video devices generally used for gambling in bars and other public places because of the increased tendency to, in turn, violate laws with respect to gambling.  Vice investigator Signorelli testified that village police conducted some eight gambling raids in less than nine months before the ordinance's enactment, every one of which involved either video slot machines or video poker machines, as specified in section 39-25(b).  Even plaintiff Serpico admitted that, as uncovered in a 1999 police raid, one of his very own bartenders was conducting illegal payouts to patrons who used the video slot machines in his bar.  

From this record, it is evident to us that the ordinance survives the rational basis test.  Perhaps defendants could have been more precise or more limited in their scope while prohibiting gaming devices which are used for illegal gambling purposes within village borders.  Chief Braglia and President Silvestri acknowledged that the ordinance may in effect ban gaming devices that are not always used for gambling but not prohibit those that sometimes are.  However, as noted earlier, that the ordinance could have been written in a "better" or more "wise" manner is of no consequence, as long as it is reasonable.  See 
Lumpkin
, 184 Ill. 2d at 124.  Pursuant to our review, a basis for finding a rational relationship between the ordinance and the village's concern of regulating this type of activity is more than "conceivable"; rather, it is quite apparent.  
Lumpkin
, 184 Ill. 2d at 124.  

D.  Vagueness and Equal Protection

Finally, plaintiffs make two minor contentions at the conclusion of their brief on appeal.  They assert that the ordinance is vague because a person of reasonable knowledge could not determine whether a given video gaming device is prohibited by the ordinance.  They further claim that the ordinance violates equal protection principles because it is enforced only in bars and public places but not in private homes.  We reject both contentions.

First, in arguing the unconstitutional vagueness of the ordinance, plaintiffs claim that one cannot determine whether a particular gaming device is prohibited under the ordinance.  Plaintiffs give the examples of games such as Monopoly, Solitaire and fortune telling machines which use cards and dice and question whether these would be banned.  Plaintiffs also cite the phrase "games of skill or science" as listed in section 39-25(a) of the ordinance and assert that no reasonable person can decipher its meaning. 

Where, as here, the ordinance does not involve a first amendment right, plaintiffs may succeed on a vagueness challenge only if they affirmatively establish that the ordinance is vague as applied to the conduct for which they are being targeted.  See 
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 291 (2003).  That is, they must prove that the ordinance does not provide clear notice that their conduct is prohibited and that its standards of application are insufficiently indefinite.  See 
Sherman
, 203 Ill. 2d at 291.  However, if, in light of surrounding facts, the ordinance clearly applies to the plaintiffs' conduct, then their challenge to its constitutionality based on vagueness must fail.  See 
Sherman
, 203 Ill. 2d at 291-92.

Based on the facts present in the instant case, we find that plaintiffs have failed to prove that the ordinance is unconstitutionally vague.  The ordinance is clear: "simulated video or mechanical gaming devices" as defined in section 39-25(b) are prohibited, while "automatic amusement machines" as defined in section 39-25(a) are allowed but with certain regulations.  These "amusement machines" include "fortune-telling machines, palm reading machines, and machines or devices for games of skill and science which return[] to the player thereof no money or property or no right to receive money or property or other thing of value."  Village of Elmwood Park Ordinance 2001-08, §39-25(a) (May 21, 2001).  Plaintiffs did not possess "amusement machines" as defined in section 39-25(a), but rather "simulated video or mechanical gaming devices," 
i.e.
, video slot machines, as specifically defined in section 39-25(b) and clearly prohibited in section 39-26.  This was the conduct for which they were targeted, not for what may or may not be prohibited or regulated pursuant to section 39-25(a).  Thus, plaintiffs cannot now complain that the ordinance is vague on the basis of the words or phrases contained in section 39-25(a).  See 
Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.
, 455 U.S. 489, 495, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191 (1982) (plaintiff who has engaged in conduct clearly prohibited by law "cannot complain of the vagueness of the law" as it applies to other conduct in which he was not engaged).

Moreover, plaintiffs' examples of Monopoly and Solitaire as the basis for a vagueness finding have no place here.  Again, the ordinance is clear and very specific in declaring that video slot machines are prohibited gaming devices.  Plaintiffs possessed video slot machines that they were required to remove from their bar upon enactment of the ordinance.  That plaintiffs now attempt in their brief on appeal to present an argument based on abstract or speculative scenarios, rather than what actually occurred in this case, cannot create a basis for a vagueness finding.  See 
Gem Electronics of Monmouth, Inc. v. Department of Revenue
, 183 Ill. 2d 470, 481 (1998) ("[a]n act is not unconstitutionally vague merely because one can conjure up a hypothetical which brings the meaning of some terms into question").  

Second, in discussing equal protection, plaintiffs claim that the testimony presented by defendants at the evidentiary hearing shows that the ordinance violates this  principle.  Plaintiffs point to President Silvestri and Chief Braglia, who testified that the village did not have an interest at this time in enforcing the ordinance against private citizens, unless they were violating state gambling laws.  Plaintiffs insist that this demonstrates that the ordinance as applied is unconstitutional.  

However, a legislature such as the village here is not bound to extend its regulatory scheme to all cases that it might possibly reach.  See 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 729; see also 
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357, 367 (1985) ("[t]he legislature need not choose between legislating against all evils of the same kind or not legislating at all").  Rather, it may confine and apply its restriction to only those classes wherein it deems the need to be the clearest.  See 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 729; accord 
Chicago National League
, 108 Ill. 2d at 367 (legislature "may choose to address itself to what it perceives to be the most acute need").  "An entire remedial scheme will not be invalidated ' simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. ' " 
Chicago National League
, 108 Ill. 2d at 367, quoting 
Friedman & Rochester, Ltd. v. Walsh
, 67 Ill. 2d 413, 421-22 (1977) quoting 
McDonald v. Board of Election Commissioners
, 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409 (1969).  Under equal protection guidelines, the legislature again need only meet the rational basis test, 
i.e.
, showing that its classifications are reasonably related to some legitimate governmental interest.  See 
America's Best
, 536 F. Supp. at 175; 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 729.  What is "reasonable" is not what is best, but only what is "fairly appropriate to the purpose" of the regulation.  
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 729 ("[t]o be invalid, the classification must be arbitrary, that is, there must be no reasonable basis for the differentiation").  If any state of facts can reasonably be conceived to sustain the differential treatment, the regulation must be upheld.  See 
Chicago National League
, 108 Ill. 2d at 368-69.  

We find that the ordinance, as applied or enforced, does not violate equal protection principles.  Plaintiffs are correct in noting that the ordinance states on its face that it is unlawful for "any person, firm or corporation" to keep the prohibited video gaming devices.  As enforced, while it is true that President Silvestri and Chief Braglia testified that the ordinance is not currently applied against private citizens of the village, plaintiffs fail to show that this differentiation is unreasonable in light of the record presented.  Defendants' choice to enforce the ordinance only in bars and other public places represents their determination that the problem of illegal gambling and gaming is most prevalent there and not in private homes.  Defendants testified accordingly; Chief Braglia stated that in his experience this is where most illegal gaming activity occurred, investigator Signorelli noted that this is where all of the village's police raids for gambling have taken place, and President Silvestri expressed that the prime focus of the ordinance currently was to prevent illegal gaming in public places because it was here that village police conducted several arrests and raids.  Thus, although having written the ordinance to apply to everyone in the village, defendants concluded that currently, the public sector was in most acute need of gaming regulation.  This was their decision to make, and though it may seem to some extent currently arbitrary, it is not unreasonable or violative of equal protection principles in light of the circumstances.  See 
Greyhound Lines, Inc.
, 24 Ill. App. 3d at 729; 
America's Best
, 536 F. Supp. at 175.

CONCLUSION

Therefore, we hold that the trial court's grant of summary judgment in favor of defendants was proper in the instant case, as there remained no genuine issue of material fact.  The video gaming devices listed in section 39-25(b) of the ordinance do not possess the required elements of communication or information which would bring them within the ambit of first amendment protection.  Moreover, the ordinance clearly is rationally related to defendants' legitimate interest in prohibiting gambling and regulating gaming within village limits, and is not void for vagueness or violative of equal protection principles.  

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.  

Affirmed.

TULLY and GALLAGHER, JJ., concur.

FOOTNOTES
1:

Employing this standard of 
review here is further supported by the fact that at issue is the construction of a municipal ordinance, which is a question of law meriting 
de novo 
review.  See 
City of Chicago v. Taylor
, 332 Ill. App. 3d 583, 585 (2002).