THIRD DIVISION

No. 1-04-3474

TERRENCE O'DONNELL,

Plaintiff-Appellee,

v.

THE CITY OF CHICAGO, a Municipal Corporation; RICHARD M. DALEY, Mayor of the City of Chicago; TERRY HILLARD, Superintendent of Police of the City of Chicago; and HUGH MURPHY, Director of Revenue of the City of Chicago,

Defendants-Appellants

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Aaron Jaffe,

Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

This appeal arises from an order of the circuit court granting plaintiff Terrence O'Donnell's motion for a permanent injunction enjoining defendants the City of Chicago and City of Chicago officials Mayor Richard M. Daley, Superintendent of Police Terry Hillard and Director of Revenue Hugh Murphy from enforcing sections 4-156-150, 4-156-190 and 4-156-280 of the City of Chicago's Municipal Code (Code) (Chicago Municipal Code §4-156-150 (amended July 25, 2001), §4-156-190 (amended April 1, 1998), §4-156-280 (amended April 1, 1998)).  Defendants argue that the court erred in finding the Code sections, which relate to automatic amusement devices used in illegal gambling, unconstitutional and invalid.  We reverse. 

Background

 On April 1, 1998, the City of Chicago enacted amendments to chapter 4-156 of the Code relating to the prevention of illegal gambling.  Effective May 9, 1998, amended section 4-156-150 provided the following definition":  

" 'Illegal amusement device' means an automatic amusement device [previously defined] that: includes a knock-off circuit; or allows more than 10 replays or free games, or maintains a count of payoffs or the number of times a person has won a game played on the device; or maintains a tally of players' scores other than the tally displayed to players; or fails to display in the required manner a tax emblem required by chapter; or has been used for illegal gambling. 'Illegal amusement device' does not include a device that properly displays a required tax emblem, that is not used for illegal gambling and that qualifies either as a crane game as defined in the Illinois Criminal Code of 1961 or as a redemption machine as defined in the Illinois Criminal Code. An automatic amusement device shall not be deemed an illegal automatic amusement device because of internal diagnostic devices or capabilities that are able to record and maintain statistical data such as the number of coins or tokens deposited, the number of games played or the number of games won, if such diagnostic devices or capabilities are intended and used exclusively for auditing of game performance."  Chicago Municipal Code § 4-156-150 (amended April 1, 1998). 

Amended section 4-156-190 provided for the seizure of an illegal amusement device as follows:

"If the mayor, superintendent of police, or the director of revenue or their duly authorized enforcement officer shall have a reasonable basis for believing any amusement device is an illegal amusement device, said device or any part or contents thereof may be seized by any duly authorized enforcement official, followed by an administrative hearing with notice to the owner within seven days of such seizure for the purpose of reviewing the appropriateness of the seizure, and held until such time as the owner of such device pays the delinquent tax, reimburses the department of revenue for actual cartage cost incurred in the seizure and pays to the department of revenue $20.00 for each day or part of day said device has been in storage. If criminal charges involving the use or condition of the device are pending, the device shall be held until disposition of the criminal charges. If it is determined at the hearing by a preponderance of the evidence that the seized device is not an illegal amusement device, it shall be returned to the owner without charge. If it is determined at the hearing that the automatic amusement device was used for illegal gambling, it shall be destroyed by the city, and all money found within the device at the time of confiscation shall become the property of the city, and shall be used to defray the costs of cartage, notice, storage and hearings. If the owner of the device does not claim the automatic amusement device within 14 days after the mailing of the notice, the device and its contents will be treated as abandoned property and the device will be destroyed."  Chicago Municipal Code § 4-156-190 (amended April 1, 1998). 

The City also amended sections 4-156-280 and 4-156-510, which provide for penalties to be imposed if an automatic amusement device is used for illegal gambling.  Chicago Municipal Code §§ 4-156-280, 4-156-510 (amended April 1, 1998).  

On May 8, 1998, plaintiff, an owner, lessor and operator of automatic amusement devices, filed a complaint against defendants, asserting, in salient part, that the amended ordinances are vague, ambiguous and overbroad and violate the freedom of speech, equal protection and due process constitutional guarantees; the City's "eminent domain" seizure and destruction of automatic amusement devices without just compensation would constitute an unconstitutional taking of plaintiff's property; in enacting the amendments, the City exceeded and violated its home rule power for the aforementioned reasons; and plaintiff was entitled to a declaratory judgment that the amended ordinances were invalid, unconstitutional and unenforceable.  

Plaintiff simultaneously filed a motion for a preliminary injunction and emergency motion for a temporary restraining order seeking to enjoin defendants from enforcing any provisions of the amended ordinances while the case was pending.  The same day, finding the contested sections of the Code "cannot be enforced as they are vague, ambiguous and overbroad," the court granted plaintiff's motion for a temporary restraining order enjoining defendants from enforcing the ordinances, as amended. 

On July 25, 2001
, the Chicago city council again amended section 4-156-150.  Effective September 1, 2001, the amendment added the following definitions to section 4-156-150:

" 'Knock-off circuit' means any mechanical or electrical device, circuitry or modification on an automatic amusement device, whereby free games shown on an externally visible indicator are released, while a record of games so released is maintained on a second indicator, meter or counter, either inside or outside the device. A reset button installed by the manufacturer of the automatic amusement device shall not, without more, constitute a knock-off circuit. 

The phrase 'more than 10 replays or free games' means more than 10 replays or free games at one time. 'Free game or replay' does not include an extension of a game awarded as a result of the player's skill, such as an extra ball in a pinball game or extended playing time in a video game. 

'Payoff' means the giving of money or other thing of value in exchange for a player's accumulated points or free games or replays. 

The phrase 'a count of payoffs or the number of times a player has won a game played on the device' means a tally, whether on paper, mechanical or electronic, and regardless of whether maintained inside, on or outside the automatic amusement device. The phrase is not intended to include a record of scores, accessible to players of the device, and linked to previous players' names, nicknames, initials or other identifiers, for purposes of comparison and competition. 

The phrase 'tally of players' scores other than the tally displayed to players does not include a record of scores, accessible to players of the device, and linked to previous players' names, nicknames, initials or other identifiers, for purposes of comparison and competition."  Chicago Municipal Code § 4-156-150 (amended July 25, 2001).

In light of the amendment, defendants moved to dissolve the temporary restraining order and dismiss plaintiff's amended complaint, arguing that the amendments clarified the terms of the gambling ordinance and thus rendered plaintiff's claims moot.  The court granted the motion to dissolve the restraining order but stayed the dissolution until December 20, 2001.  The court granted plaintiff leave to file a second amended complaint and a new motion for a temporary retraining order and preliminary injunction, which he did on December 17, 2001.  Plaintiff's second amended complaint made essentially the same arguments as his original complaint, including that the ordinances are facially overbroad, vague, ambiguous and unintelligible and give enforcement officers unbridled discretion to determine which amusement devices were prohibited.  The court granted plaintiff's motion for a temporary restraining order, again enjoining enforcement of the four amended sections of chapter 4-156 pending resolution of the case.  The court denied defendants' motion to dismiss the complaint and the case went to trial.  

Following a full hearing, the court issued its order and opinion on October 20, 2004, granting plaintiff's request for permanent injunctive relief.  Although the court found no merit in plaintiff's estoppel argument, it did find sections "4-156-150, 4-156-190 and 4-156-[2]80 * * * unconstitutional, invalid and unenforceable" and permanently enjoined the city and its officials "from enforcing any provision" of those sections.  On November 1, 2004, pursuant to the parties' agreement, the court ordered that there was no just reason to delay enforcement or appeal of the matter.  Defendants filed their timely notice of appeal on November 18, 2004. 

Defendants argue on appeal that the court erred in finding that (1) section 4-156-150's definition of "illegal amusement device" is internally inconsistent such that it renders the term and the section unconstitutionally vague; (2) section 4-156-190's provision for seizure of such a device upon reasonable belief of a law enforcement officer violates the Illinois Constitution's prohibition against unreasonable seizures; (3) section 4-156-190's provision for an administrative hearing without naming the administrative body with jurisdiction over the hearing violates due process; and (4) section 4-156-190's provision providing that the owner of a seized device may retrieve the device without incurring cartage and storage costs if he can prove it is not an illegal amusement device violates due process because it places the burden of persuasion regarding the illegality of the device on the owner rather than the City of Chicago. 

Analysis

Standard of Review

Generally, the standard of review of a court order issuing a permanent injunction is manifest weight of the evidence.  
C.J. v. Department of Human Services, 
331 Ill. App. 3d 871,878, 771 N.E.2d 539, 547 (2002).  However, the trial court's order granting permanent injunctive relief arose out of its declaration that sections 4-156-150, 4-156-190 and 4-156-280 are unconstitutional, out of its resolution of questions of law, not fact.  Accordingly, the issue here is whether the contested ordinances are unconstitutional.  We review this question of law 
de novo
.  
C.J, 
331 Ill. App. 3d at 879, 771 N.E.2d at 547;
 People v. Arguello
, 327 Ill. App. 3d 984, 986, 765 N.E.2d 98, 101 (2002).

Section 4-156-150

Pursuant to plaintiff's second amended complaint, the court held that sections 4-156-150, 4-156-190 and 4-156-280 are "unconstitutional, invalid and unenforceable" and issued a permanent injunction enjoining defendants from enforcing those sections.  The court's holding was, in large part, a result of its finding that the definition of "illegal amusement device" in section 4-156-150 is "ambiguous, contradictory and irreconcilable," notwithstanding the later amendment further defining the terms of section 4-156-150.  The court considered the section "extremely vague and extremely ambiguous" and "so contradictory that a reasonable person could not understand what is and what is not illegal," and, thus, unconstitutional.  Defendants argue on appeal that the court erred in this finding.      

A municipal ordinance is entitled to a presumption of validity and, as the party challenging the ordinances at issue here, plaintiff has the burden of showing their invalidity.  
City of Aurora v. Navar
, 210 Ill. App. 3d 126, 132, 568 N.E.2d 978, 982 (1991).  In order to overcome the presumption of validity, " 'it must be established by clear and convincing evidence that the ordinance, as applied to [the challenging party], is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare.' " 
City of Evanston v. Ridgeview House, Inc.
, 64 Ill. 2d 40, 66, 349 N.E.2d 399, 412 (1976), quoting
 Exchange National Bank of Chicago v. County of Cook
, 25 Ill. 2d 434, 440, 185 N.E.2d 250, 253 (1962).  However, plaintiff does not limit his challenge to the ordinance's application to his own circumstances.  Rather, he argues, as he did below, that section 4-156-150 is unconstitutionally vague on its face.  

"The right to challenge a statute as being vague on its face where the statute clearly applies to the conduct of the party making the challenge does not exist unless first amendment concerns are involved."  
People v. Jihan
, 127 Ill. 2d 379, 386, 537 N.E.2d 751, 754 (1989).  Unless section 4-156-150 implicates first amendment rights, plaintiff may not, as he did here, challenge the ordinance as vague on its face.  
Jihan
, 127 Ill. 2d at 386, 537 N.E.2d at 754.  If section 4-156-150 does not implicate first amendment rights, plaintiff can only argue that the ordinance is vague as applied to himself, as applied to conduct for which he is being targeted.  
Jihan
, 127 Ill. 2d at 385-86, 537 N.E.2d at 754.  We can then only examine the ordinance in light of the facts of the case at hand, facts that are few given that plaintiff's claim was a preemptive challenge to the validity of the ordinance on its face rather than a reactive one specific to his circumstances.  
Jihan
, 127 Ill. 2d at 385, 537 N.E.2d at 754.  As defendants correctly point out, the trial court did not address plaintiff's argument that first amendment rights were implicated by the ordinances.  However, we must address this issue because, before we can consider whether section 4-156-140 is vague on its face, we must first determine whether it implicates first amendment rights such that plaintiff has standing to file this type of vagueness challenge.

As with political speech, entertainment can enjoy first amendment protections.  
Serpico v. Village of Elmwood Park
, 344 Ill. App. 3d 203, 210, 799 N.E.2d 961, 967 (2003).  In order to be accorded such protected status, the entertainment must communicate some element of information or some idea.  
Serpico
, 344 Ill. App. 3d at 210, 799 N.E.2d at 967.  Simplistic games, such as bingo, pinball, black jack and slot machines, where the interaction and communication involved is " 'singularly in furtherance of the game' " and " 'totally divorced from a purpose of expressing ideas, impressions, feelings, or information unrelated to the game itself,' " do not constitute protected speech under the first amendment.  
Serpico
, 344 Ill. App. 3d at 211, 799 N.E.2d at 968, quoting 
Allendale Leasing Inc. v. Stone
, 614 F. Supp. 1440, 1454 (D. R.I. 1985).  However, automatic amusement games involving "complex plots, the advancement to different levels, character development, and a 'visual and auditory milieu in which [a] story line is played out' " have been accorded first amendment free speech protection.  
Serpico
, 344 Ill. App. 3d at 212, 799 N.E.2d at 968-69, quoting 
Wilson v. Midway Games, Inc.
, 198 F. Supp. 2d 167, 181 (D. Conn. 2002).  It is irrefutable that section 4-156-150's definition of illegal amusement device covers a broad range of automatic amusement devices, some of which could possess protected free speech characteristics.  Arguably, therefore, since imposing restrictions on those devices would implicate first amendment rights, plaintiff could properly challenge section 4-156-150 as vague on its face.  

Due process is violated when "a law is so vague and devoid of standards as to leave the public unsure of what is and is not prohibited [citation] or if it fails to supply adequate guidelines to the administrative body which must enforce it."  
City of Aurora
, 210 Ill. App. 3d at 132, 568 N.E.2d at 982
.  
An ordinance's language "must convey sufficiently definite warning and fair notice of what conduct is proscribed, and whether notice is adequate is measured by common understanding and practices."  
City of Aurora
, 210 Ill. App. 3d at 133, 568 N.E.2d at 983
.
  
An ordinance is unconstitutional if it is "so vague that persons of ordinary intelligence must necessarily guess at its meaning."  
Waterfront Estates Development, Inc. v. City of Palos Hills
, 232 Ill. App. 3d 367, 376-77, 597 N.E.2d 641, 649 (1992).  

Plaintiff argued below, and the trial court agreed, that the definition of illegal amusement device in section 4-156-150 is so contradictory as to make it unconstitutionally vague.  Section 4-156-190 clearly sets out the parameters of what mechanisms and characteristics make an automatic amusement device presumptively illegal and further defines the terms used to describe those mechanisms and characteristics.  It also clearly delineates the situations in which the presumption does not apply.  Provision for these exceptions does not, as the trial court found, make section 4-156-150 internally inconsistent.  It is entirely clear.  For example, if an automatic amusement device includes a prohibited element, such as a "knock-off circuit" releasing and keeping track of games released or a "tally of players' scores" not visible to the player, then it is an illegal amusement device.  Only if such a prohibited internal diagnostic device or capability is intended and used exclusively for auditing game performance will the amusement device not be deemed illegal.  There is no inconsistency in the definition of an illegal amusement device.  

Moreover, plaintiff appears to have abandoned his inconsistency argument.  On appeal, he limits his argument that the ordinance is vague to assertions that various terms and phrases are not properly defined, are unclear and/or ambiguous.  His main contention is that the term "knock-off circuit" is not properly defined such that a person of reasonable knowledge could determine whether a particular amusement device is illegal under section 4-156-150.  Plaintiff essentially argues that there are many different definitions or interpretations of the term possible, leading to the conclusion that the term is unclear.  It is irrelevant that there may be different definitions of "knock-off circuit" elsewhere or that opinions may vary about what a "knock-off circuit" is.  The term is specifically defined in section 4-156-150 in order to eliminate just such differences of opinion.  That description does not conflict with any other term or definition in the ordinance and is the definition selected by the city council as best reflecting its aims in passing the amendment.  Accordingly, it is the only definition that matters in enforcing the ordinance.  It is more than definite enough to let the public and enforcement officials know what the city council considers a "knock-off circuit."  As plaintiff's counsel acknowledged during oral argument before this court, he could not suggest a definition of "knock-off circuit" that would make the term any clearer.

Plaintiff similarly argues that the phrases "replay," "free games," "pay off," "internal diagnostics," "statistical data," "reset button" and "tally of players' scores" are subject to a wide variety of interpretations such that an average person is incapable of determining whether a particular device is illegal.  He does not, however, suggest alternate interpretations of these phrases to illustrate his point.  Moreover, where a term is not defined, it is given its "ordinary and popularly understood" meaning.  
People v. Maggette
, 195 Ill. 2d 336, 349, 747 N.E.2d 339, 347 (2001).  Unlike "knock-off circuit," which arguably has no commonly understood meaning and was therefore fully defined in the ordinance, none of the contested phrases are particularly complex, difficult to understand or open to much interpretation.  In addition, section 4-156-150 further defines or limits the application of the few phrases that might be open to interpretation, such as "payoff" or "free game or replay."  Applying the most obvious meanings and taking into account the definitions and limitations stated in the ordinance, we do not find these phrases so indefinite that a reasonable person could not determine whether a particular device is illegal.

In the same vein, plaintiff argues that contradictory trial testimony regarding the interpretation of various portions of section 4-156-150 illustrates the vagueness of the ordinance.  "Condemned to the use of words, we cannot expect mathematical certainty from our language."  
Grayned v. City of Rockford
, 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300 (1972).  Clearly no ordinance can be drafted to cover or eliminate any and all possible scenarios or interpretations that might develop thereunder.  There will always be differences of opinion.  But it is not the case that section 4-156-150 is so indefinite that it does not provide adequate guidance to the public and to enforcement officials as to what makes an automatic amusement device illegal.  We find the provisions of section 4-156-150 are sufficiently definite to afford an individual of normal intelligence adequate notice of what constitutes an illegal amusement device.  Section 4-145-150 is not unconstitutionally vague.

Section 4-156-190

The court found section 4-156-190 unconstitutional because (a) allowing seizure of an amusement device based solely on the reasonable belief of the enforcement officer that the device was illegal constitutes seizure of property without due process; (b) failing to list the administrative body with jurisdiction over the hearing denied due process; and (c) putting the burden of proof on the owner of the amusement device to prove that the device is not illegal denies due process.  Defendants assert that the court erred in these determinations.

Given our conclusion that section 4-156-150 is not unconstitutionally vague, we do not find, as plaintiff posits, that section 4-156-150 so poorly defines the characteristics of an illegal amusement device that the discretion accorded the enforcement officers by section 4-156-190 will be applied unequally, in violation of the equal protection.  Equal protection guarantees that "similarly situated individuals will be treated similarly, unless the government demonstrates an appropriate reason to do otherwise."  
City of Urbana v. Andrew N.B.
, 211 Ill. 2d 456, 466, 813 N.E.2d 132, 138 (2004).  Here, section 4-156-150 provides more than adequate information from which an officer can determine whether a device is illegal and this determination will not, as plaintiff argues, be dependent on an individual officer's "hunches and perceptions" and be applied unequally.  

Further, section 4-156-190's provision for seizure of an amusement device by an enforcement officer if he has a reasonable basis for believing it to be illegal is not a denial of due process.  First, provision for seizure on an officer's "reasonable basis" belief comports with the Illinois and United States Constitutions' prohibitions against "unreasonable" seizures.  Ill. Const. 1970, art. I, § 6; U.S. Const. amend. IV.  A seizure is "reasonable" if, at the time an item is seized, the seizing officer has a reasonable belief, based on the facts and circumstances known to him, that the item constitutes evidence of criminal activity.  
People v. Alexander, 
272 Ill. App. 3d 698, 705, 650 N.E.2d 1038, 1045 (1995).  Plaintiff would have enforcement officers seize suspected illegal amusement devices only when they observe a payoff.  But just because there is no payoff does not mean that there is no illegal gambling occurring.  More often than not, a player will gamble on a device but will lose the game.  There is no payoff unless a player wins.  If players won consistently, there would be no incentive for bar owners to have gaming machines on their premises.

Second, such seizure does not constitute unconstitutional seizure without notice.  Courts have repeatedly held that gambling devices are not lawful subjects of property protected by law. 
 City of Chicago v. Sayer
, 330 Ill. App. 181, 186, 70 N.E.2d 870,873 (1946).  " 'The legislature have [
sic
] determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction 
without violating any constitutional provision
.' " (Emphasis added.)  
City of Chicago
, 330 Ill. App. at 186-187, 70 N.E.2d at 873, quoting 
Frost v. People
, 193 Ill. 635, 640-41, 61 N.E. 1054, 1056 (1901).  It is " 'well settled that things which are capable of no use for lawful purposes . . . are not the subject of property.  * * *  If an instrument can have no lawful use, it must be presumed, in the absence of evidence to the contrary, that an illegal use is intended.   [Citation.]  Its very existence is an imminent danger to the social welfare. [Citation]; and it may be seized under statutory authority, or even under general police regulations.' "  
City of Chicago
, 330 Ill. App. at 187, 70 N.E.2d at 873, quoting 
Stanley-Thompson Liquor Co. v. People
, 63 Colo. 456, 458-59, 168 P. 750, 751 (1917).   

Lastly, it is not the case that the City can, without more, confiscate and destroy a suspected illegal amusement device at will.  Any seizure is merely temporary, pending administrative review of the seizure.  The ordinance provides for notice of the administrative hearing to the owner within seven days of seizure.  Unless the owner/operator of the device does not claim the device within the 14-day period specified in the ordinance or cannot show that it was improperly seized or, if the seizure is determined to be reasonable, that the device is not an illegal amusement device, it will be returned to its owner without charge.  Granted, once reasonableness of the seizure has been shown, the burden is on the owner to show, by a preponderance of the evidence, that the device is not an illegal amusement device.  However, placing the burden of persuasion on the owner is not a violation of due process.  " 'If an instrument can have no lawful use, it must be presumed,
 in the absence of evidence to the contrary
, that an illegal use is intended.' " (Emphasis added.)  
City of Chicago
, 330 Ill. App. at 187, 70 N.E.2d at 873, quoting 
Stanley-Thompson Liquor Co.
, 63 Colo. at 459, 168 P. at 751.  

Section 4-156-150 does not specify the administrative body that will conduct the administrative hearing.  However, section 2-14-190(a) of the Code provides that, with certain exceptions, chapter 4-156 not among them, the City's Department of Administrative Hearings will provide the "administrative adjudication for the enforcement of all provisions of the Municipal Code."  Chicago Municipal Code § 2-14-190(a) (amended April 29, 1998).  Accordingly, the Department of Administrative Hearings will conduct any hearing regarding the seizure of illegal amusement devices.   

Section 4-156-280

Although the court held that section 4-156-280 was unconstitutional and unenforceable, its order does not contain an analysis of why this is the case.  However, since section 4-156-280 sets the fines to which a person is subject if he violates any provisions in chapter 4-156 of the Code (Chicago Municipal Code § 4-156-280 (amended April 1, 1998)), presumably the court found section 4-156-280 "unconstitutional" and unenforceable solely as a result of its finding that sections 4-156-150 and 4-156-190 were unconstitutional and unenforceable.  Plaintiff makes no argument regarding the constitutionality of section 1-156-280 standing alone.  Given our finding that sections 4-156-150 and 4-156-190 are constitutional and enforceable, we find that the court erred in declaring section 4-156-280 unconstitutional and unenforceable and in enjoining defendants from enforcing this section.

Free Speech Implications

It should be noted that "standards of permissible statutory vagueness are strict in the area of free expression."  
National Ass'n for the Advancement of Colored People v. Button
, 371 U.S. 415, 432, 9 L. Ed. 2d 405, 417, 83 S. Ct. 328, 337 (1963).  "The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application."  
National Ass'n for the Advancement of Colored People
, 371 U.S. at 432-33, 9 L. Ed. at 418,  83 S. Ct. at 338.  However, " '[t]he government may impose reasonable restrictions on the time, place and manner of protected speech, provided the restrictions are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." ' " 
Rothner v. City of Chicago
, 929 F.2d 297, 303 (7th Cir. 1991), quoting 
Ward v. Rock against Racism
, 491 U.S. 781, 791, 105 L. Ed. 2d 661, 674, 109 S. Ct. 2746, 2753 (1989), quoting 
Clark v. Community for Creative Non-Violence
, 468 U.S. 288, 293, 82 L. Ed 2d 221, 227, 104 S. Ct. 3065, 3069 (1984).  

"A valid time, place and manner regulation * * * must be content-neutral."  
People v. Jones
, 188 Ill. 2d 352, 356, 721 N.E.2d 546, 549 (1999).  "Government regulation of expressive activity is content-neutral so long as it is justified without reference to the content of regulated speech."  
Rothner
, 929 F.2d at 303.  Whether an ordinance is content-neutral is a matter of legislative intent.  
XLP Corp. v. County of Lake
, 359 Ill. App. 3d 239, 246, 832 N.E.2d 480, 487 (2005), citing 
City of Renton v. Playtime Theatres, Inc.
, 475 U.S. 41, 47, 89 L.Ed. 2d 29, 37-38, 106 S.Ct. 925, 929 (1986).  When ascertaining the goals of the legislative body, we may take the preamble to a contested ordinance into account.  
David E. Shelton Productions, Inc. v. City of Chicago
, 167 Ill. App. 3d 54, 57, 520 N.E.2d 1073, 1075 (1988).  

The preamble to the April 1, 1998, ordinance amending the Code sections at issue here states that the city council enacted the amendments because "
some amusements authorized within the City of Chicago have been diverted from lawful activity to illegal gambling" and "remedies currently available to deal with the problem of such illegal gambling are insufficient to protect the citizens of Chicago from the evils associated with illegal gambling."  Chicago Municipal Code ch. 4-156, Preamble (amended April 1, 1998).  The preamble shows that the City Council's intent in restricting the illegal amusement devices was not related to any informational content in those devices.  

Moreover, section 4-156-150's definition of an illegal amusement device is based solely on whether an automatic amusement device possesses certain mechanical and/or statistical characteristics, not on the plot, character, story line or informational content of the device.  The purpose of section 4-156-150 and the definitions and restrictions therein are clearly unrelated to the content of any speech.  Similarly, the provisions for seizure of illegal amusement devices and penalties for possession of such devices set forth in sections 4-156-190 and 4-156-280 are unrelated to the content of any speech.  Accordingly, the contested ordinances are content-neutral. 
 Rothner
, 929 F.2d at 303.  

A content-neutral time, place and manner restriction on constitutionally protected speech is subject to an " 'intermediate level of scrutiny.' "  
Jones
, 188 Ill. 2d at 357, 721 N.E.2d at 550, quoting 
Turner Broadcasting System, Inc. v. Federal Communications Comm'n
, 512 U.S. 622, 662, 129 L. Ed. 2d 497, 530, 114 S. Ct. 2445, 2469 (1994).  To be constitutional, a content-neutral regulation must be narrowly tailored to serve a significant government interest and leave open ample alternative channels for communication of the restricted information.  
Jones
, 188 Ill. 2d at 357, 721 N.E.2d at 550, citing 
Ward
, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2753.

There is no question that "the protection of its citizens from the problems associated with illegal gambling" (Chicago Municipal Code ch. 4-156, Preamble (amended April 1, 1998)) constitutes a " 'substantial' governmental interest."  
Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico
, 478 U.S. 328, 341, 92 L. Ed. 266, 281, 106 S. Ct. 2968, 2977 (1986).  Indeed, "gambling is an activity which is 'subject to regulation or to complete prohibition.' "  
Phillips v. Graham
, 86 Ill. 2d 274, 286, 427 N.E.2d 550, 555 (1981), quoting 
Finish Line Express, Inc. v. City of Chicago
, 72 Ill. 2d 131, 138, 379 N.E.2d 290 (1978).  The ordinances were intended to address the problems associated with the diversion of automatic amusement games from lawful activity to illegal gambling.  To that end, section 4-156-150 identifies the characteristics of an illegal gambling device and defines those characteristics narrowly, even providing a few exceptions to and limitations on the general definition in order to prevent an overbroad application.  The ordinances are precisely tailored to curtail the possession of only those devices possessing these characteristics, characteristics identified by the City Council as providing the most telling indicators of use of a device for illegal gambling, and then only if used for illegal gambling.  Should a device possess the salient "illegal" characteristics but not be used for illegal gambling, the ordinance provides for a hearing upon seizure of any suspected illegal amusement device and lawful use of the machine can be shown at that time.  We find the ordinances are narrowly tailored to serve the significant government interest in protecting citizens from the evils associated with illegal gambling.  

Lastly, any free speech information implicated by the ordinance can be communicated in a myriad of other ways.  The players of these devices are free to play any device, automatic or otherwise, expressing the identical informational or story content, as long as the device does not contain the prohibited mechanical or statistical characteristics identifying it as a gambling device.  These characteristics are entirely unrelated to the plot, character, story line and informational content of the device.  They are nothing more than tools used by the owners and operators of the devices to track money made and lost on the machines, unrelated to the expression of a player's ideas and feelings, to the character development of a game or the mileau in which the game is played out.  If a player is truly not gambling on an amusement device, he has no interest in these mechanisms and can find a machine to play that does not contain them.  Accordingly, because the restrictions in the contested ordinances are content-neutral, are narrowly tailored to serve a significant government interest and leave open a myriad of other channels for communication of the information contained in to amusement devices, the restrictions are reasonable and the ordinances are a legitimate restriction on protected first amendment expression. 

For the reasons stated above, we find plaintiff has not met his burden of rebutting the presumption that sections 4-156-150, 4-156-190 and 4-156-280 are constitutional and reverse the decision of the trial court permanently enjoining defendants from enforcing these Code section.

Reversed.

HOFFMAN, P.J., and ERICKSON, J., concur.